Early L. SEIBER and Larry L. Seiber, Plaintiffs-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

June 11, 1976.

Certiorari Denied by Supreme Court Sept. 7, 1976.

382

Philip A. Condra, Oak Ridge, for plaintiffs-in-error.

R. A. Ashley, Jr., Atty. Gen., and David L. Raybin, Asst. Atty. Gen., Nashville, James B. Scott, Dist. Atty. Gen., Clinton, for defendant-in-error.

## OPINION

DAUGHTREY, Judge.

■ This appeal from the defendants' conviction by an Anderson County jury presents us with a single issue for resolution: whether after jeopardy has attached in a misdemeanor case a General Sessions Court may bind an accused to the Circuit or Criminal Court upon a finding under T.C.A. § 40–416 that the offense merits a fine in excess of fifty dollars. We hold that a subsequent indictment and retrial under such circumstances violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution[1] and the identical provision in Art. 1, § 10 of the Tennessee Constitution.

Under T.C.A. § 40–118[2] the General Sessions Court is given jurisdiction

. . . to try and determine and render final judgment in all misdemeanor cases brought before said court by warrant or information wherein the person charged with such misdemeanor enters a plea of guilty in writing or requests a trial upon the merits and expressly waives [in writing] an indictment, presentment, grand jury investigation and jury trial . . . . In such cases the trial shall proceed before the court without the intervention of a jury, and the court shall enter such judgment, and . . . may inflict such punishment within the limits provided by law for the particular offense, as the court may determine proper . . ., but nothing herein shall be construed to grant such court the power to impose a fine in excess of fifty dollars ($50.00) . . . and the court shall have no jurisdiction of the trial of misdemeanors for which the minimum punishment is a fine of more than fifty dollars ($50.00).

The limitation on the imposable fine results from the provision in Art. 6, § 14 of the Tennessee Constitution to the effect that "(n)o fine shall . . . exceed fifty dollars, unless it shall be assessed by a jury . . . ." Thus the legislature found it necessary to augment the jurisdictional authority of the General Sessions Court by further providing in T.C.A. § 40–416:

If the offense merit a fine exceeding fifty dollars ($50.00), or imprisonment and fine of any amount . . ., the justice shall not render judgment against the offender . . ., but shall bind the party to appear at the next circuit or criminal court.

## I.

The two defendants, Early L. Seiber and Larry L. Seiber, were arrested on February 25, 1975, and charged with resisting arrest, aiding the escape of a prisoner, and destruction of public property, all growing out of an incident which occurred four days earlier. On March 4, 1975 they pleaded not guilty before the Anderson County Trial Justice Court,[3] and executed written waivers of their right to presentment or indictment and to trial by jury. The State presented six witnesses and the defense four, including the testimony of one of the defendants. At the close of the proof, after overruling a defense motion to dismiss, the judge bound the defendants to the grand

1. In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) the United States Supreme Court extended the Double Jeopardy Clause of the Fifth Amendment to the states through the Fourteenth Amendment's Due Process Clause.

2. The original trial in this case actually occurred in the Anderson County Trial Justice Court, exercising General Sessions jurisdiction under the mandate of Private Acts of 1959, ch. 31, § 8.

3. See note 2, *supra*.

jury and placed them on bond. From the record it appears that his order was based on a determination under T.C.A. § 40–416 that the offense merited as a penalty a fine greater than fifty dollars.

Subsequently the defendants were indicted for rescue of a person in lawful custody (T.C.A. § 39–3801) and malicious destruction of property (T.C.A. § 39–4501). They interposed a plea of former jeopardy, in the form of a pre-trial motion to dismiss, which was overruled in the Criminal Court. Again the State produced its case against the defendants, calling five witnesses and tendering a sixth. The defense presented two witnesses, and then moved unsuccessfully for a directed verdict. After due deliberation the jury assessed each defendant a total fine of $400.00, and the trial judge added thereto a sentence of eleven months and twenty-nine days incarceration. A subsequent motion for a new trial again raising the double jeopardy issue was overruled by the trial court.

## II.

■ The facts below have been stipulated, and all parties agree that jeopardy had attached in the Trial Justice Court prior to the Magistrate's § 40–416 bindover order. *See State v. Daniels*, 531 S.W.2d 795 (Tenn. Cr.App.1975). The question for our resolution is whether, by reason of the former proceedings in general sessions court, the defendants were "twice put in jeopardy."

We think it is clear that both the proceedings in general sessions court and those in the criminal court were full adjudicatory hearings, and that both imposed on these defendants precisely the kind of jeopardy or risk encompassed by the Fifth Amendment. As the United States Supreme Court has recently described it in *Breed v. Jones*, 421 U.S. 519, 529, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346, 355 (1975):

. . . the risk to which the term jeopardy refers is that traditionally associated with "actions intended to authorize criminal punishment to vindicate public justice." Because of its purpose and potential consequences, and the nature and re-

sources of the State, such a proceeding imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once "for the same offense." (Citations omitted.)

In *Breed* the Court further quoted from *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), reaffirming "(t)he policy of avoiding multiple trials [which] has been regarded as so important that exceptions to the principle have been only grudgingly allowed." *Id.*, 420 U.S. at 343, 95 S.Ct. at 1022, 43 L.Ed.2d at 357.

It is the prosecution's contention that the situation before us should be deemed such an exception to the constitutional rule against double jeopardy, based on one of two theories.

■ First, the State argues that the Trial Justice Court judge was acting within his statutory authority under T.C.A. §.40–416. But it is axiomatic that a federal constitutional right may not be abrogated by the operation of a state statute. Further, the State contends that a magistrate must hear evidence in order to determine in judicious fashion whether the particular offense *in fact* merits a fine in excess of fifty dollars. We agree that the court's order under T.C.A. § 40–416 should have some basis in fact and reason; it will otherwise constitute an abuse of the discretion implicitly granted to the magistrate under the statute. But we do not think that this conclusion necessitates a full adjudicatory hearing to support a § 40–416 order. We see no reason why the General Sessions judge may not conduct an informal pre-trial hearing or inquiry, upon notification of the accused's desire to waive indictment and trial by jury pursuant to T.C.A. § 40–118, as a basis for determining the applicability of §.40–416 to the charge against the accused.

■ The problem posed by §. 40–416 is closely analogous to the situation examined by the United States Supreme Court in *Breed v. Jones, supra*. There the seventeen

year old respondent had been subjected to an adjudicative hearing in juvenile court, at which time he was found guilty of a criminal violation. His case was temporarily adjourned for a dispositional hearing, but on the latter date the juvenile judge ruled that the respondent was not amenable to rehabilitation through the facilities of the juvenile court and transferred his case to the criminal court for prosecution as an adult. In *Breed* the Supreme Court held that the Double Jeopardy Clause applies in juvenile cases and that the subsequent proceedings in criminal court thus violated the Fifth Amendment's protection against double jeopardy. 421 U.S. at 528, 95 S.Ct. at 1785, 44 L.Ed.2d at 357. The Court suggested that in most cases its ruling would require "that the transfer decision be made prior to an adjudicatory hearing," involving "evidence concerning the alleged offense (which) is considered relevant . . ." to the transfer order. *Id.,* 421 U.S. at 536, 95 S.Ct. at 1789, 44 L.Ed.2d at 359. The Court stopped short of "prescrib(ing) criteria for, or the nature and quantum of evidence that must support, the (transfer) decision," and said:

> We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain and embarrassment of two such proceedings. *Id.,* 421 U.S. at 537, 95 S.Ct. at 1790, 44 L.Ed.2d at 360.

We think the *Breed* rationale is equally persuasive when applied to transfer hearings under T.C.A. § 40–416. We therefore conclude that the decision to transfer a defendant by bindover order under § 40–416 must be made prior to the hearing on the merits in General Sessions Court in order to avoid conflict with the Double Jeopardy Clause.

The State's second argument is that no new jeopardy arose as a result of the defendants' bindover from General Sessions Court and trial in Criminal Court. According to this analysis jeopardy attached when the witnesses were sworn in the first hearing and continued until final disposition by the judge and jury in the second trial. The State cites *Breed v. Jones* in support of this rationale, but unfortunately for the State's position, only the United States District Court which heard *Breed* adopted the concept of "continuing jeopardy" as applicable to the facts of the case. *Jones v. Breed,* 343 F.Supp. 690 (C.D.Cal.1972). Both the Ninth Circuit Court of Appeals and the United States Supreme Court specifically *rejected* this argument. *Jones v. Breed,* 497 F.2d 1160, 1166–67 (9th Cir. 1974); *Breed v. Jones, supra,* 421 U.S. at 533, 95 S.Ct. at 1787, 44 L.Ed.2d at 358. The Supreme Court noted that the concept, first articulated by Mr. Justice Holmes, had never been adopted by a majority of the Court and was useful primarily as an analytical tool to explain why an accused who has secured the reversal of a conviction on appeal may be retried for the same offense. *Id.* That is not the case before us, and we conclude that the concept of "continuing jeopardy" has no application here.

### III.

We hold that these defendants have been placed twice in jeopardy in violation of the Fifth Amendment to the federal constitution. The defendants did not waive their rights under the Double Jeopardy Clause, i. e. they neither instigated nor acceded to the abandonment of the first trial short of judgment. Nor does the case fall within the ambit of the "manifest necessity" doctrine of *United States v. Perez,* 22 U.S. 579, 6 L.Ed. 165 (1824), allowing retrial of a defendant after a mistrial where "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." See also *Etter v. State,* 185 Tenn. 218, 205 S.W.2d 1, 3 (1947). Indeed, the public policy against successive trials for the same offense and in favor of judicial finality demands the result we reach here.

The remaining question involves the proper relief to be afforded these defend-

ants. The State argues that the case should be remanded to the Trial Justice Court for reinstatement there. But this result would put the defendants in *triple* jeopardy and is clearly inappropriate.

We think that jeopardy having attached at the first trial, "[the defendants'] plea of double jeopardy is a conclusive bar to retrial." *Thomas v. Beasley*, 491 F.2d 507, 508 (6th Cir.), *cert. denied*, 417 U.S. 955, 94 S.Ct. 3083, 41 L.Ed.2d 674 (1974). *Accord, United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). The prohibition of the Double Jeopardy Clause is "not against being twice punished, but against being twice put in jeopardy." *Downum v. United States, supra*, 372 U.S. at 736, 83 S.Ct. at 1034 quoting *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The action of the magistrate in aborting the original trial prior to judgment thus precludes further prosecution against these defendants.

Accordingly, the judgment of the court below is vacated and the case is remanded for appropriate orders of the Criminal Court discharging these defendants with prejudice to the State.

DWYER and O'BRIEN, JJ., concur.