**STATE of Tennessee, Appellee,**

v.

**Richard ANTHONY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 2, 1992.

Kenneth L. Miller, Cleveland, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Rose Mary Drake, Sp. Asst. Atty. Gen., Nashville, and Jerry N. Estes, Dist. Atty. Gen., Cleveland, for the State.

## OPINION

WADE, Judge.

The defendant, Richard Anthony, appeals from his convictions for aggravated robbery and conspiracy to commit aggravated robbery. The trial court imposed concurrent sentences of 12 and six years, respectively. The following issues have been presented for review:

(1) whether the trial court erred by refusing to dismiss the indictment after two prior mistrials;

(2) whether the trial court erred by refusing to declare two state's witnesses accomplices as a matter of law; and

(3) whether witnesses were erroneously permitted to testify in violation of the rule of sequestration.

We find no reversible error and affirm the judgment of the trial court.

On December 16, 1989, the defendant approached his neighbors, Tony and Susan Hunt, about his plan to commit a robbery at a motel in Bradley County. Although Susan Hunt, by most accounts, attempted to persuade her husband not to participate, Tony Hunt helped formulate the plan and agreed to assist in the robbery. The three left the residence in the Hunts' pickup truck in hopes of finding Jack Kimsey, who might help in the robbery. Kimsey was unwilling to assist but 17–year–old Dustin Hayes agreed to participate.

The plan was for the Hunts to check into a motel. Tony Hunt was to be a "fake witness" while Hayes and the defendant, disguised as black men with pantyhose over their faces, would commit the robbery. The defendant was to carry the .38 snub-nosed revolver and Hayes was to tie the desk clerk.

After considering other motels, the men chose the Holiday Inn South on I–75. The Hunts checked in. Susan Hunt stayed in the room while Tony Hunt returned to the lobby for cigarettes. The defendant, wearing a hooded poncho, ran into the lobby, displayed a gun, and ordered the desk clerk to give him the money from the cash drawer. After the robbery, Tony Hunt left the lobby and met the defendant outside the back door. The two returned to the room where they found Hayes and Susan Hunt. The defendant threw the money on the bed and cleaned his face. Tony Hunt took $100.00 of the proceeds. Hunt then said he would call "the law" in order to "make this look good"; he suggested that the defendant leave while he looked for the desk clerk.

After finding the desk clerk in the men's restroom, Tony Hunt returned to the lobby to call the police; he told officers the robber was a "big, tall, fat black man." The desk clerk described the robber differently but agreed that the robber was "sort of shiny" black with camouflage paint on his face. He stated that the robber wore a jacket or a poncho with a hood.

A few months later, the Hunts were again questioned by police. Susan Hunt told what had actually occurred and Tony Hunt, after confronted with her statement, admitted his participation.

Tony Hunt pled guilty and Dustin Hayes entered a plea in the juvenile court. Each testified for the state at trial. Hayes testified that he had disguised himself but got scared just prior to the robbery and returned to the room. Hayes asked the defendant for the weapon used in the robbery, left the Holiday Inn with the defendant before the police arrived, then went to the apartment of Mark Pullen and Cindy Lambert where the defendant changed clothes.

Although there were discrepancies between his description and the actual appearance of the defendant, the desk clerk was able to make a positive identification at a lineup. Pullen confirmed that the defendant, with smudge marks around the side of his face, had come with Hayes to his apartment just after the robbery. The defendant changed clothes there. Pullen eventually sold the gun for Hayes.

The defendant testified that he was with the Hunts on the night of the robbery. He stated that the Hunts, accompanied by an unidentified boy, left the defendant with Pullen and Lambert at their apartment. He stated that Pullen and Lambert left him

alone in the apartment for several hours until Hayes come by driving the Hunts' truck. The defendant denied that he participated in the robbery or had clothes like those described by the desk clerk.

## I

The defendant argues that the trial court should have dismissed the indictment because his two previous trials had ended in hung juries. On August 7, 1990, the trial court declared a mistrial when the jury was unable to agree upon a verdict; the same result occurred at the conclusion of the second trial on September 7, 1990. Just before the third trial, the defendant asked the court to dismiss the indictment. In this appeal, he claims that the trial court should not have permitted a third proceeding.

■ The double jeopardy guarantees of the fifth amendment to the United States Constitution and Art. I, § 10 of the Tennessee Constitution protect again a second prosecution for the same offense after an acquittal. The provisions also protect against a second prosecution for the same offense after a conviction. Multiple punishments for the same offense are also prohibited. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

■ In *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), the United States Supreme Court held as follows:

> [T]he question of whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether "there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated."

(citations omitted.)

No showing of manifest necessity is required when the defendant actively seeks or consents to the premature termination of the proceedings. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). *Seiber v. State*, 542 S.W.2d 381, 385 (Tenn.Crim.App.1976).

In *Arnold v. State*, 563 S.W.2d 792 (Tenn.Crim.App.1977), the defendant was tried four times for the same offense. The first trial ended in a mistrial because of an improper remark between a juror and a witness; the second and third trials ended in hung juries. A fourth trial concluded in a conviction for concealing stolen property. Our court upheld the conviction.

■ The United States Supreme Court recognized that a mistrial may be declared when a jury is unable to reach a verdict. *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824). In that case, the court listed as an exception to the prohibition against double jeopardy instances when there is a manifest necessity for the [dismissal] else "the ends of public justice would otherwise be defeated." *Id.* Subsequently, it was held that a succeeding trial or trials may take place where the public interest in a fair trial outweighs the accused's right to an end of the prosecution. *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). When multiple, successive trials result in hung juries, the propriety of a dismissal of the indictment rests within the discretion of the trial court. It must weigh the rights of the public to complete the prosecution against the right of the accused to be free from harassment, oppression, or an unlimited number of trials. *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

■ The record here contains no evidence of whether the successive trials may have, in this instance, outweighed the state's right to a complete adjudication. There is absolutely nothing to indicate that the trial court abused its discretion by ruling favorably for the state. We cannot, therefore, find error.

## II

The defendant also argues that Susan Hunt and Mark Pullen, witnesses for the state, should have been declared accomplices as a matter of law. The trial court ruled that both Tony Hunt and Dustin

Hayes were accomplices to the crime and that, in consequence, their testimony must have been corroborated before the jury could return a verdict of guilty against the defendant. As to Susan Hunt and Mark Pullen, the trial court ruled that whether they were accomplices was a question for the jury, not the court.

The defendant's position is premised upon the fact that Susan Hunt heard plans of the robbery, accompanied the perpetrators to the Holiday Inn, and occupied a motel room there while the robbery took place.

 Whether a witness is an accomplice as a matter of law depends upon the facts. When there is no dispute that a witness participated in the crime, the trial court should make the determination. *Conner v. State*, 531 S.W.2d 119, 123 (Tenn.Crim.App.1975); *State v. Dulsworth*, 781 S.W.2d 277, 285 (Tenn.Crim.App.1989). If, however, the issue is in dispute, the question is for the jury. *Id.* An accomplice has been defined as one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of the crime. *Clapp v. State*, 94 Tenn. 186, 30 S.W. 214, 216 (1895); *Marshall v. State*, 497 S.W.2d 761 (Tenn.Crim. App.1973). The defendant may not be convicted upon the uncorroborated testimony of an accomplice in his crime. *Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34 (1964).

 The facts here were in dispute. Susan Hunt was not involved in the robbery itself. Although she accompanied her husband and overheard the robbery plans, there was testimony that she attempted to persuade her husband not to participate. Indications are that she did not accept any of the proceeds herself. She testified that she refused to dispose of the jacket the defendant wore during the robbery. Finally, her statement to the police resulted in the arrest of each of the three participants. And, while there was circumstantial evidence implicating Susan Hunt in the crimes, the matter of whether she was an accomplice was properly submitted to the jury.

Pullen stated that he found the weapon in his apartment on the morning after the robbery took place. Hayes, who had slept on the couch, told Pullen he wanted to get rid of the gun. Pullen claimed that he did not know that it had been used in the robbery. Although the defendant disputed that, there was clearly a factual question.

We hold that the trial court did not commit error by permitting the jury to resolve whether Hunt or Pullen were accomplices.

### III

Susan and Tony Hunt, Mark Pullen, Dustin Hayes, and the Holiday Inn desk clerk apparently returned to the courtroom after giving their testimony in the second trial. At the beginning of this third trial, defense counsel asked that their testimony be excluded for violation of the rule of sequestration. The state conceded that the witnesses returned to the courtroom during the second trial but stated that each had testified before they had done so. Moreover, the state asserted that the defendant had made no objection at the time.

 In 1852, Judge R.L. Caruthers of the Supreme Court wrote about "the rule":

The practice of examining the witnesses separate and apart from each other, at the request of either party, is invaluable, in many cases, for the ascertainment of truth and the detection of falsehood. Such has been the experience of wise men in all ages, from the days of Daniel, that divinely-inspired judge, down to the present time. By our practice it is the right of parties to demand of the court an order that the witnesses shall not hear each other examined....

*Nelson v. State*, 32 Tenn. 237, 257 (1852).

Mark A. Walker, former presiding judge of this court, has also commented on "the rule":

[It] means that the witnesses are to be excluded from the courtroom during the testimony of other witnesses, separated from the witnesses, and examined individually during the trial.

*State v. Upchurch*, 620 S.W.2d 540, 543 (Tenn.Crim.App.1981) (abridged opinion).

Prior to the passage of the Tennessee Rules of Evidence, effective January 1,

1990, the substance of "the rule" remained unchanged by the passage of time. Trial judges had always been afforded wide discretion in determining whether to impose the sanction of excluding the evidence of the witness suspected of having violated the rule. *State v. Moffett*, 729 S.W.2d 679, 681 (Tenn.Crim.App.1986).

Rule 615 of the Tennessee Rules of Evidence applied, for the first time, "the rule" to rebuttal witnesses. The Advisory Commission Comments to that rule further provide that "the rule" requires that "witnesses should not only be instructed to refrain from discussing their courtroom testimony, but lawyers and others should be instructed not to transmit what witnesses say in court." "The rule" may be invoked at anytime and is mandatory. N. Cohen, D. Paine & S. Sheppeard, Tennessee Law of Evidence § 615.3 (2nd ed. 1990).

■■■ As to sanctions for a violation, one authority provides as follows:

> Rule 615 does not provide sanctions for its violation. However, pre-rule Tennessee authorities and federal decisions under the equivalent and similar federal Rule 615 agree that courts have the discretion to consider an array of sanctions for violation of a sequestration rule. The most severe sanction would be a mistrial or a ruling for or against a party on a particular issue. This draconian sanction should be used only in egregious cases, perhaps involving intentional violations of the rule for the purpose of creating perjured testimony. The court's contempt power could also be used since the witness violated a court order.

N. Cohen, D. Paine & S. Sheppeard, Tennessee Law of Evidence § 615.4 (2nd ed. 1990).

The treatise also suggests less severe treatment. A violator may be subjected to cross-examination about the incident. A jury could be instructed to consider the violation of the sequestration order in assessing the witnesses' testimony. On occasion, the witness has been precluded from giving testimony. In *Williams v. State*, 491 S.W.2d 862 (Tenn.Crim.App.1972), our court held, however, that if the testimony of a witness who has violated the rule is critical, his testimony should not ordinarily be excluded. Although that case predated the new rules of evidence, the rationale for the holding may still apply. This is especially so when there are sanctions less drastic than prohibiting the violating witness from giving testimony.

Initially, there is an inadequate record for us to reverse on this issue. There is no transcript of the pertinent parts of the second trial. In arguing the question, counsel for the defendant and the state simply relied upon their recollection of the prior proceeding. On the other hand, their recollection was that "the rule" had been demanded in the second trial although circumstances suggest there was a violation. Yet, there was apparently no objection by the defendant; the error was, therefore, waived. A defendant may not be granted relief on appellate review when he fails to takes action reasonably necessary to prevent or nullify the error. Tenn.R.App.P. 36(a); *Meade v. State*, 484 S.W.2d 366 (Tenn.Crim.App.1972).

Moreover, the facts here do not indicate a serious violation. The witnesses were apparently excluded during the first trial, excluded during most of the second trial, and sequestered during the last proceeding. There is no suggestion that the state "connived, procured, or knew of" the sequestration violation. *United States v. Gibson*, 675 F.2d 825 (6th Cir.), *cert. denied* 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). There is absolutely no indication that the defendant was prejudiced by the violation of the sequestration order. That is, that one or more of the witnesses changed or embellished their testimony from the second to the third trial. *State v. Chadwick*, 750 S.W.2d 161, 166 (Tenn.Crim. App.1987); *State v. Wicks*, 729 S.W.2d 283 (Tenn.Crim.App.1987). Under all of these circumstances, we think the witnesses were properly permitted to testify.

Accordingly, the judgment is affirmed.

DWYER and BIRCH, JJ., concur.