IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2003

## STATE OF TENNESSEE v. LONNIE WALTER HURD

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S41,840    R. Jerry Beck, Judge**

**No. E2002-00832-CCA-R3-CD**
**October 8, 2003**

The defendant, Lonnie Walter Hurd, appeals from his Sullivan County Criminal Court jury convictions of driving under the influence (DUI) and possession of cocaine. On appeal, he claims that the convicting evidence is insufficient, that certain evidence was improperly admitted, that the testimony of a state's witness violated the witness sequestration rule, and that the trial court erred in permitting a defense witness to be cross-examined about her prior drug convictions. Discerning no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Mark Toohey, Kingsport, Tennessee, for the Appellant, Lonnie Walter Hurd.

Paul G. Summers, Attorney General & Reporter; P. Robin Dixon, Jr., Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and B. Todd Martin, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Bristol (Tennessee) Police Officer Danny Farmer testified at trial that on July 4, 1998, at 4:15 a.m., the police dispatcher informed him that a driver of a Pontiac Sunbird had reported erratic driving involving a Chevrolet Cavalier. The dispatcher reported that the Cavalier had almost struck the Sunbird and that the driver of the Cavalier blew his horn in a manner that scared the Sunbird's driver. Officer Farmer saw a Cavalier pass his location on Highway 11-E. He followed it and after observing it veer across the white fog line numerous times and swerve back and forth between the centerline and the fog line twice, he activated his blue lights and stopped the Cavalier. As he approached the car, he discerned a faint odor of alcohol. He found the defendant behind the wheel and had him step out of the car.

Officer Farmer had the defendant perform field sobriety tests and testified that the defendant could not recite the alphabet past the letter "G" and was unable to successfully complete the one-leg stand, the heel-to-toe walk, and the finger dexterity test. The defendant was "leaning real bad to one side" and was "just about to stagger." The officer opined that the defendant "had consumed alcohol, but his performance of the tests didn't match the odor of alcoholic beverages that [the officer] smelled on his person." The test results indicated a higher degree of impairment than was suggested by the modest odor of alcohol. The officer noticed that the defendant's eyes were "very dilated."

When Officer Farmer then walked up to the Cavalier's door to speak to the female passenger and owner of the car, Sharla Bentley, he detected the odor of marijuana in the car and concluded that the defendant was under the influence of marijuana, a Schedule VI controlled substance.

The officer then arrested the defendant and searched the Cavalier. He found a still-warm marijuana cigarette in the passenger-side floor, cocaine in a restaurant bag located between the front seats, and bags in the passenger-side floor containing cocaine, alprazolam, diazepam, and clonazepam. Officer Farmer took the defendant and Ms. Bentley to a hospital to obtain a blood test for the defendant; however, the officer testified, the defendant refused to consent to the test. Officer Farmer denied on cross-examination that the defendant had complained during the traffic stop that he was illiterate and that he did not know the alphabet. He further denied that the defendant requested a breath test.

Officer Farmer played for the jury a videotape of the defendant's driving and the defendant's performance of the field sobriety tests.

Sharla Bentley testified for the defense that she owned the Cavalier and the drugs found inside. She stated that the defendant was unaware that drugs were inside the car. She testified that the defendant was driving that night at her request. She wanted to go to a "light show," anticipated the need for a sober driver, and knew that the defendant did not drink. She denied that the defendant had been smoking marijuana in the car and insisted that the marijuana cigarette found in the floor was not his. She denied that the cigarette was warm or that the smell of marijuana emanated from the car.

Ms. Bentley testified that a recent gunshot injury prevented the defendant from performing the field sobriety tests. She asserted that the defendant asked for a blood test at the hospital. She denied using cocaine that night but admitted that she may have smoked marijuana in the car on July 3, when she also took pills and drank alcohol. She testified that she kept cocaine in the car because she was selling it.

Ms. Bentley testified that, prior to being stopped by Officer Farmer, she and the defendant had been to a bar and that, as they were leaving, some girls knocked her down and snatched her purse. Then as she and the defendant were leaving the parking lot in the Cavalier, she

saw a car that she thought might contain the purse snatchers and told the defendant to follow them. She stated that the Cavalier was unsuccessfully trying to keep up with the other car when Officer Farmer pulled it over. She testified that the Cavalier jerked to the right because of "some problems" with the steering mechanism. She claimed that the officer only decided to arrest the defendant after she had spoken impudently to the officer.

During cross-examination, the state requested a Tennessee Rule of Evidence 609 hearing to determine whether Ms. Bentley could be impeached via evidence of her 2002 felony convictions of possession of cocaine and a Schedule IV controlled substance for resale. The lower court allowed the state to use the prior felony convictions for impeachment purposes, and the court instructed the jury as to the limited use of this evidence.

The defendant testified that he was Ms. Bentley's designated driver, a service he had previously performed for other friends. He denied that he drank at the bar or that he had smoked marijuana. He testified that the Cavalier had mechanical problems, including that "[t]he tilt wheel would move three inches either way." He stated that he was unaware of the drugs in the car.

The defendant testified that he informed Officer Farmer during the traffic stop that, due to his limited education, he could not recite his "ABC's backwards" and that he told the officer, "I'd have to see my ABC's wrote down to even say them forward." He also testified that he told the officer that he was unable to perform the one-leg stand and the heel-to-toe tests because of a recent bullet wound. He stated that he told Officer Farmer that he would take a breathalyzer test. He denied that he had refused a blood test and denied that he had checked the refusal box on the form.

In rebuttal, the state called Officer Chuck Wells, who testified that he saw the defendant check the refusal box and "write in" the refuse-to-sign portion on the form.

Based upon the evidence as above summarized, the jury convicted the defendant of DUI and simple possession of cocaine, both misdemeanors. The trial court imposed an eleven-month, 29-day sentence in each case and ordered the sentences to be served concurrently. The judgments provide that the sentences shall be suspended upon the defendant serving 30 days in jail.

In the defendant's first issue, he challenges the sufficiency of the convicting evidence. In analyzing a claim of insufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the state and defers to the jury to resolve factual conflicts, to determine the credibility of witnesses, and to draw inferences from circumstantial evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). Within these limitations, the appellate court determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*; *see* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781 (1979).

The defendant was convicted of DUI and possession of cocaine, both misdemeanors. As is pertinent to the conviction offense, a person commits DUI who

-3-

drive[s] or [is] in physical control of any . . . motor driven vehicle on any of the pubic roads and highways of the state while [u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effect of the central nervous system.

Tenn. Code Ann. § 55-10-401(a)(1) (Supp. 2002). A person commits simple possession of cocaine who "knowingly possess[es] or casually exchange[s cocaine,] a controlled substance. . . ." *Id.* § 39-17-418(a) (1997).

The defendant argues that his own testimony and that of Ms. Bentley sufficiently controverts the state's proof that the defendant was driving while impaired so as to negate the jury's finding of guilt. As pointed out above, however, the jury, not this court, is the finder of fact, and upon appellate review, we neither revisit the jury's resolution of factual and credibility issues, nor do we substitute inferences from the facts that differ from those drawn by the jury. We only examine whether the evidence, in the light most favorable to the state, is sufficient to support a guilty verdict beyond a reasonable doubt. The evidence of DUI in the present case, consisting of the officer's observations and trained opinions, suffices.

The defendant claims that the cocaine belonged to and was possessed by Ms. Bentley. We agree that the evidence is uncontroverted that Ms. Bentley owned and possessed the cocaine The question remains, however, whether the defendant also possessed the cocaine.

Tennessee Code Annotated section 39-17-418(a), prohibiting possession of a controlled substance, "is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." *State v. Ross*, 49 S.W.3d 833, 845 (Tenn. 2001). Constructive possession of a drug is based upon the power and intention to exercise dominion and control over the drug, either directly or through others. *Id.* "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" *Id.* at 845 (quoting *State v. Transou*, 928 S.W.2d 949, 955-56 (Tenn. Crim. App.1996) (citations omitted)). "As such, although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." *Id.* (citation omitted).

In our view, the evidence reasonably supports an inference that the cocaine found in the restaurant bag between the front seats was readily accessible to the defendant, that he knew it was there, and that he had the ability to take actual possession. *See State v. Tommy William Davis*, No. E2002-00511-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, Feb. 28, 2003) ("The proscription in the theft statute of 'exercis[ing] control' over the property strikes us as the functional equivalent of 'constructive possession,' thereby allowing ownership or, as in this case, control of the vehicle to assume particular significance."); *State v. Gonzalo Moran Garcia*, No. M2000-01760-CCA-R3-CD, slip op. at 37 (Tenn. Crim. App., Nashville, Feb. 20, 2002) ("defendant's ownership *or control over* a vehicle in which the contraband is secreted will support

a finding of constructive possession and, hence, knowing possession"), *perm. app. granted* (Tenn. Oct. 21, 2002); *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) ("Knowledge may be inferred from control over the vehicle in which the contraband is secreted."). Also, Ms. Bentley had put the defendant in charge of the car, the odor of marijuana emanated from the car, and the defendant was himself under the influence of some form of drug. The defendant was well acquainted with Ms. Bentley, a person who used drugs and sold cocaine. The defendant failed to convince the jury that he did not know that cocaine was being transported in the car. *See State v. Selina G. Harrelson*, No. W1999-00521-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Jackson, July 28, 2000) (surrounding circumstances of defendant's control of vehicle and relationship to owner may reveal more than mere association with the owner and more than the defendant's presence in the other's vehicle), *perm. app. denied* (Tenn. 2001). Under the circumstances, the jury could reasonably infer that the defendant constructively possessed the cocaine.

In his next three issues, the defendant claims that (1) the trial court ran afoul of the hearsay rule when it admitted Officer Farmer's testimony that the dispatcher reported a Cavalier being driven erratically, (2) the trial court should have disallowed Officer Farmer's testimony about the results of field sobriety tests when the officer failed to ascertain whether the defendant understood the test before taking it, and (3) the trial court should have excluded Officer Farmer's opinion about the defendant's degree of impairment. The state argues that each of these issues is waived because the defendant made no contemporaneous objection at the time the evidence was offered.

We agree with the state. To preserve an evidentiary issue for appellate review, an aggrieved party must make an objection contemporaneously to the offer of the evidence, thus affording the trial court the opportunity to pass on the objection. Tenn. R. Evid. 103(a); Tenn. R. App. P. 36(a); *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000). In the present case, the defendant failed to object to the evidence about which he now complains. These evidentiary issues are, therefore, waived.

In his next issue, the defendant argues that the trial court erred in allowing Officer Wells to testify after he had spoken with Officer Farmer following the latter's testimony. Prior to calling its first witness, the state invoked the "rule," which is embodied in Tennessee Rule of Evidence 615:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. *The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. . . .* This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in

the court's discretion, counsel is genuinely surprised and demonstrates
a need for rebuttal testimony from an unsequestered witness.

(Emphasis added.) Before the prospective witnesses left the courtroom, the trial judge instructed them, "[Y]ou will not discuss your testimony with any other witness or allow any other witness to discuss their testimony with you."

During the state's cross-examination of defense witness Sharla Bentley, the prosecutor announced that a state witness, Officer Danny Wells, was in the courtroom. Apparently, Officer Wells had not been present at the beginning of the trial. The trial judge instructed Officer Wells to leave the courtroom and admonished him not to discuss his testimony with any other witnesses or to allow other witnesses to discuss their testimony with him.

Officer Farmer, as the prosecuting witness, had remained in the courtroom throughout the trial.

Prior to the state presenting its rebuttal, the defendant objected that sometime following Officer Farmer's case-in-chief testimony, he and Officer Wells had met with the assistant district attorneys general. The trial judge announced that Rule 615 does not prevent witnesses from speaking to one another during the trial; rather, it prohibits witnesses' discussing testimony during the trial. The trial court then conducted a jury-out hearing to determine whether the meeting among the officers and counsel had violated Rule 615. Officer Farmer testified in the hearing and affirmed that within the preceding few minutes, he had gone into a witness room with two assistant prosecutors and Officer Wells. Officer Farmer testified, "The only conversation I had with [Officer Wells] was apologizing for having to call him down there." He denied that he and Officer Wells discussed any testimony or exhibits and denied that Officer Wells discussed his potential testimony with him; however, Officer Farmer did overhear an assistant district attorney general discussing potential rebuttal testimony with Officer Wells. Officer Wells then testified during the jury-out hearing that he discussed his potential testimony with the assistant prosecutor in Officer Farmer's presence. Officer Wells denied that Officer Farmer discussed with him any testimony or exhibits that had been admitted in the case.

Following the jury-out hearing, the trial judge noted his concern that a prosecutor might be able to circumvent Rule 615 by discussing potential testimony with a prospective witness while in the hearing of another witness; however, the court correctly pointed out that Officer Wells was the only witness who discussed his testimony with the prosecutor, and even though Officer Farmer was present, Officer Farmer had been present throughout the trial and would be present in the courtroom during any rebuttal testimony of Wells's. The trial judge discerned that the only real potential for violating Rule 615 was the possibility that Officer Farmer discussed his previous testimony with Officer Wells prior to Wells's rebuttal testimony. The judge accredited the officers' testimony that such did not occur, and he overruled the defendant's Rule 615 objection.

The trial resumed. Although Officer Farmer had testified in the state's case-in-chief, Officer Wells testified only in rebuttal. Officer Wells's rebuttal testimony addressed only the visit to the hospital following the defendant's arrest. Officer Wells testified that, during the trip to the hospital, Officer Farmer comported himself in a professional manner, and once at the hospital, the defendant refused in writing to submit to a blood test. Officer Wells was not present during the earlier field sobriety tests. Following a brief and meaningless cross-examination of Officer Wells, the state called Officer Farmer in rebuttal; however, its primary question was disallowed by the trial court, and the state withdrew its other question, essentially rendering Officer Farmer's rebuttal testimony meaningless.

"The sequestration rule prevents witnesses from hearing testimony of other witnesses and subsequently adjusting testimony." *State v. David Scarbrough,* No. E1998-00931-CCA-R3-CD, slip op. at 20 (Tenn. Crim. App., Knoxville, July 11, 2001), *perm. app. denied* (Tenn. 2002); *see also State v. Harris*, 839 S.W.2d 54, 68 (Tenn. 1992). Rule 615 does not prevent counsel from preparing witnesses for their testimony. *Neil P. Cohen et al., Tennessee Law of Evidence* § 615[9] (4th ed. 2000).

On appeal of a claim that Rule 615 was violated, this court considers "the seriousness of the violation and the prejudice, if any, enured to the [appellant]." *State v. Coulter*, 67 S.W.3d 3, 52 (Tenn. Crim. App. 2001) (citation omitted); *see also State v. Anthony*, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992).

We need not tarry long in determining whether Officer Wells violated the "rule" in discussing his potential testimony in the hearing of Officer Farmer. Although Officer Wells had been identified in open court as a prospective witness and had been excused from the courtroom and admonished to observe the "rule," he was discussing his potential testimony with counsel; Officer Farmer's presence was, at that point, inconsequential. He had already testified, he did not divulge the content of foregoing testimony to Officer Wells, and as the prosecuting witness, he would be present anyway during Officer Wells's rebuttal testimony. Moreover, Officer Farmer's post-Wells rebuttal was essentially aborted. Thus, Officer Wells's discussion of his prospective testimony in the presence of a witness who had already testified had no substantial import on the trial. Furthermore, Officer Wells's testimony consisted of the events surrounding the defendant's refusal to sign the consent form for a blood test. He offered no evidence about the more material facts in the case. Thus, we hold that the defendant has shown no prejudice and cannot prevail on the Rule 615 issue.

In his final issue, the defendant claims the trial court erred in admitting evidence of Sharla Bentley's prior drug convictions without previously obtaining permission to do so via a jury-out hearing. On cross-examination, the state asked Ms. Bentley whether she had been convicted of her drug charges emanating from the July 4 incident, and Ms. Bentley responded affirmatively. The trial judge intervened *sua sponte*, excused the jury, and informed the prosecutor that he should have alerted the court that he was about to impeach the witness via a prior conviction as a means of allowing the court the opportunity to determine the admissibility of the prior conviction evidence

pursuant to Tennessee Rule of Evidence 609.  The trial court then proceeded to conduct a hearing and ultimately ruled that Ms. Bentley's prior felony drug convictions could be used to impeach her, but the prior misdemeanor drug convictions could not be used.

Tennessee Rule of Evidence 609 provides in pertinent part:

(a) General Rule.  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

(1) The witness must be asked about the conviction on cross-examination.  If the witness denies having been convicted, the conviction may be established by public record.  If the witness denies being the person named in the public record, identity may be established by other evidence.

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.  The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused.  If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(b) Time Limit.  Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution;  if the witness was not confined, the ten-year period is measured from the date of conviction rather than release.  Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value

of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

Tenn. R. Evid. 609 (a).

The trial judge in the present case was apparently under the impression that, when impeaching a non-defendant witness via his or her prior convictions, the state had a duty to alert the court prior to impeaching the witness and obtain a jury-out hearing to determine the admissibility of the conviction evidence. However, Rule 609 only requires prior notice of the state's intention to impeach via a prior conviction when the witness is the accused, unless the prior convictions are more than ten years old. *Cf. id.* 608(b) (establishing the sponsoring party's right to request a hearing prior to the cross-examining party's impeachment inquiry, when the nature of the impeachment is based upon specific instances of conduct, as opposed to prior convictions). Apparently, the convictions in the present case were imposed in 2000. Accordingly, we discern no error in the state's straightforward attempt to impeach Ms. Bentley pursuant to Rule 609(a)(1), without procedurally seeking a jury-out hearing.[1]

In sum, we find no reversible error in the proceedings below and affirm the lower court's judgments.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1]We do not suggest that the state's use of prior convictions for impeachment purposes is exempt from substantive review if the party sponsoring the witness timely challenges the impeachment. In that case, the impeachment evidence must meet the criteria of Rule 609(a)(2) and the balancing test of Rule 403. *See id.* 609, Advisory Comm'n Comments.