# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 12, 2007

## STATE OF TENNESSEE v. MARIO ANDRE McELRATH

**Direct Appeal from the Circuit Court for Obion County**
**No. C06-54     William B. Acree, Jr., Judge**

---

**No. W2006-02621-CCA-R3-CD  - Filed December 3, 2007**

---

The defendant, Mario Andre McElrath, was convicted by an Obion County jury of attempted sale of .5 grams or more of cocaine within 1000 feet of a school zone, a Class B felony, and sentenced to ten years in the Department of Correction and a fine of $2000.  On appeal, he argues that the trial court erred in denying his motion for a new trial based on the State's violation of the rule of sequestration and in finding that the Drug-Free School Zone Act included criminal attempt as an offense that triggers increased sanctions.  We conclude that these claims are without merit. However, based upon our plain error review, we conclude that the trial court improperly applied the Drug-Free School Zone Act to enhance the defendant's sentence.  Accordingly, we affirm the defendant's conviction but remand for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded for Resentencing**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

James T. Powell, Union City, Tennessee, for the appellant, Mario Andre McElrath.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon and Kevin D. McAlpin, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In view of the fact that the defendant does not question the sufficiency of the evidence, we will set out an abbreviated version of the facts.

On January 20, 2006, the Union City Police Department set up an undercover operation in which a confidential informant arranged to purchase crack cocaine from the defendant. The informant testified that she asked the defendant to meet her outside her home. When the defendant arrived in a vehicle driven by the codefendant, she entered the backseat of the car and handed the defendant $200. While the defendant and the informant did not discuss what was to be purchased with the $200, the defendant later testified that he knew what she wanted because $200 was the street price for a quarter-ounce of crack cocaine. The informant got out of the car, and as the codefendant drove off, Union City police officers stopped the car and arrested the codefendant and the defendant.

Investigator Shawn Palmer of the Union City Police Department, assigned to the Twenty-Seventh Judicial District Drug Task Force, testified that he had supplied the informant with $200 prior to her entering the defendant's vehicle. Afterwards, the defendant's vehicle was stopped and the defendant had the same $200. Investigator Palmer said that the exchange between the defendant and the informant took place 796 feet from a preschool and 816 feet from a day care center and that he measured the distances with a laser range finder, which measures distances using radar. He said he knew the range finder was working correctly when he measured the preschool and day care center because he was familiar with that area and could judge distances.

Investigator David Crocker of the Obion County Sheriff's Department testified that on January 20, 2006, he was assigned to the Twenty-Seventh Judicial District Drug Task Force and assisted Investigator Palmer with the surveillance of the drug buy between the confidential informant and the defendant. At the State's request, he measured the distance from the site of the transaction to the preschool and day care center, using a wheel with an attached measuring device. He found that the distance from the day care center to the site of the transaction was 822 feet, and the distance from the preschool to the site of the transaction was 563 feet. Investigator Crocker said that Palmer had taken the measurements with a laser finder, but he was not told about Palmer's testimony.

## ANALYSIS

### I. Rule of Sequestration

The defendant argues that the State violated the rule of sequestration by revealing to Investigator Crocker the testimony of Investigator Palmer. As we understand it, his theory is that Investigator Crocker took his measurements only after learning that the accuracy of Investigator Palmer's measurements had been challenged on cross-examination. The defendant asserts that his defense was prejudiced by this violation because the State had to establish the proximity of the transaction to the preschool and day care center beyond a reasonable doubt in order for the DFSZA to apply to the defendant's sentence. The State responds that the record does not support the defendant's claim that Investigator Crocker was informed about Investigator Palmer's testimony. After reviewing the record, we agree with the State.

Tennessee Rule of Evidence 615 provides in part: "At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. . . . The

court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness." The Rule may be invoked at any time and is mandatory. State v. Anthony, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992). Its purpose is to prevent witnesses from altering their version of events after hearing the testimony of another. State v. Harris, 839 S.W.2d 54, 68 (Tenn. 1992).

The rule of sequestration was invoked before opening statements in the defendant's case. Later, on cross-examination from the codefendant's counsel, Investigator Crocker explained the circumstances that caused him to take his measurements:

Q: Officer Crocker, why did you go and make those measurements today?

A: At the request of the district attorney.

Q: Who told you to go do that?

A: Mr. Morris.[1]

Q: Do you know why you were told to do it?

A: To measure the distance from where the transaction took place to the day care and the Miles Head Start [preschool].

Q: Had that not already been done?

A: I believe Investigator Palmer had done it with a laser finder.

Q: Do you know why you – do you know why you were told to do it again?

A: No.

Q: Were you told about Officer Palmer's testimony?

A: No.

During the bench conference on the motion to strike Investigator Crocker's testimony, the trial court asked the prosecutor what he had told Investigator Crocker. Counsel replied, "I didn't tell him anything. Last week I told him to go get the wheel and measure it, and this morning when the investigator – I guess David Morris told him to go measure." At the hearing on the defendant's motion for a new trial, counsel for the State said, "I had actually talked to the officers prior to trial about taking the wheel and going out there, and when the issue was raised, I went back to . . . Officer

---

[1]The record does not disclose Mr. Morris' identity.

Crocker and told him, 'You remember me telling you to take that wheel?' And he said, 'Yeah.' I said, 'Go take it.'"

In denying the defendant's motion for a new trial, the trial court said, "I find no merit to the sequestration argument. I think [the prosecutor] is entitled as the State's attorney to instruct his witnesses to develop whatever evidence may be necessary during the course of a trial." Implicit in these remarks is a finding that the State did not reveal any of Investigator Palmer's testimony to Investigator Crocker in violation of the rule of sequestration. The record does not preponderate against such a finding, so we uphold this determination of the trial court.

## II. Applicability of the Drug-Free School Zone Act

The defendant also challenges the application of the Drug-Free School Zone Act (DFSZA), Tennessee Code Annotated section 39-17-432, to enhance his offense classification from a Class C to a Class B felony. He contends that the DFSZA may only be used to enhance convictions for violations of, or conspiracies to violate, Tennessee Code Annotated section 39-17-417. Because section 39-17-417 does not prohibit specifically the *attempted* sale of a controlled substance, the defendant theorizes that his conviction was not subject to enhancement by the DFSZA. The State urges a more expansive construction of the DFSZA, reasoning that "the broad and inclusive prefatory language in Tenn. Code Ann. § 39-17-432(a) signals the intent of the legislature to enhance the punishment of any illegal drug activity that occurs within one thousand feet of a school." As we will explain, we agree with the State's interpretation of the statute.

The DFSZA provides, in part:

(a) It is the intent of this section to create Drug-Free Zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a Drug-Free Zone are necessary to serve as a deterrent to such unacceptable conduct.

(b)(1) A violation of [Tenn. Code Ann.] § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

(2) In addition to any other penalty imposed by this section, a person convicted of violating this subsection (b) shall also be subject to the following:

-4-

(A) Upon conviction of a Class E felony, a fine of not more than ten thousand dollars ($10,000);

(B) Upon conviction of a Class D felony, a fine of not more than twenty thousand dollars ($20,000);

(C) Upon conviction of a Class C felony, a fine of not more than forty thousand dollars ($40,000);

(D) Upon conviction of a Class B felony, a fine of not more than sixty thousand dollars ($60,000); and

(E) Upon conviction of a Class A felony, a fine of not more than one hundred thousand dollars ($100,000).

(3) A person convicted of violating this subsection (b), who is within the prohibited zone of a preschool, childcare center, public library, recreational center or park shall not be subject to additional incarceration as a result of this subsection (b) but shall be subject to the additional fines imposed by this section.

Tenn. Code Ann. § 39-17-432 (2006).

Tennessee Code Annotated section 39-17-417 criminalizes the manufacture, delivery, sale, or possession of a controlled substance, providing as to cocaine or methamphetamine:

(a) It is an offense for a defendant to knowingly:

(1) Manufacture a controlled substance;

(2) Deliver a controlled substance;

(3) Sell a controlled substance; or

(4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.

. . . .

(c) A violation of subsection (a) with respect to:

(1) Cocaine or methamphetamine is a Class B felony if the amount involved is point five (.5) grams or more of any substance containing cocaine or

methamphetamine and, in addition, may be fined not more than one hundred thousand dollars ($100,000)[.]

Tenn. Code Ann. § 39-17-417(a), (c)(1). The defendant challenges the trial court's holding that the DFSZA applies to attempted violations of section 39-17-417.

Issues of statutory construction are questions of law to be reviewed *de novo* by an appellate court, which is to "effectuate legislative intent":

Courts are restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity exists which requires further inquiry to ascertain legislative intent. The language employed must be considered in the context of the entire statute, and the component parts of a statute should be construed, if possible, consistently and reasonably.

State v. Goodman, 90 S.W.3d 557, 563-64 (Tenn. 2002) (citations omitted).

At the hearing on the defendant's motion for a new trial, the trial court noted that section (a) of the DFSZA speaks of creating "Drug-Free Zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities." The court then concluded that "[t]he legislative intent is expressed in that statute. It would seem to me to be illogical to believe that one could be convicted of sale under this statute, but not of attempted sale. I'm going to deny your motion for [a new trial] upon that ground. I think it's certainly legislative intent to include the sale and all lesser included offenses of that."

We agree with the trial court that the legislature intended the DFSZA to apply to attempted violations of Tennessee Code Annotated section 39-17-417. Attempts to manufacture, possess, sell, or deliver controlled substances implicate many of the same distractions and dangers as completed violations of section 39-17-417. As this court has noted: "Inherent within the trafficking and distribution of drugs is the potential for serious bodily injury. Although we recognize that not all drug deals involve violence, we do, however, recognize that the very nature of the act makes the potential for serious bodily injury ever present." State v. Holston, 94 S.W.3d 507, 512 (Tenn. Crim. App. 2002). This principle is equally applicable to attempted drug sales. Section 39-17-432(a) expresses the unequivocal intent of the legislature to eradicate from schools and other protected facilities the specter of unlawful possession, distribution, and use of controlled substances. To hold that convictions for attempted violations of section 39-17-417 are not subject to sentencing enhancement by the DFSZA would be to frustrate that intent. This assignment is without merit.

### III. Plain Error in Sentencing under the Drug-Free School Zone Act

Having examined and rejected both of the defendant's assignments of error, ordinarily our analysis would be complete. However, pursuant to a plain error review, we conclude that although

the defendant's fine is within the range set by the DFSZA, his period of incarceration cannot be increased by its application because it exempts from its coverage, for incarceration purposes, preschools and day care centers, locations near where the defendant's attempted sale occurred.

It is clear that a plain error review of this issue is appropriate. "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. Crim. P. 52(b) (2007). In State v. Smith, 24 S.W.3d 274 (Tenn. 2000), our supreme court adopted the test for plain error first announced by this court in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994). In order for us to find plain error, Adkisson requires that "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" Smith, 24 S.W.3d at 282 (quoting Adkisson, 899 S.W.2d at 641-42).

As to the first factor, the record establishes that, although the defendant was convicted of a Class C felony, he was sentenced, based upon the DFSZA, as a Range I, standard offender convicted of a Class B felony. The trial court began with a sentence of eight years, the minimum within the appropriate range, then enhanced the sentence to ten years based on the defendant's prior convictions.

Proof as to the second Adkisson factor, a breach of a clear and unequivocal rule of law, is also evident here. The defendant was convicted of attempted sale of .5 grams or more of cocaine, a Schedule II controlled substance. Sale of .5 grams or more of cocaine is a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1) (2006). Criminal attempt is an offense punished one classification lower than the most serious crime attempted; therefore, the defendant's conviction for attempted sale of .5 grams or more of cocaine is a Class C felony. See Tenn. Code Ann. § 39-12-107(a). Application of the DFSZA increases the classification from a Class C back to a Class B felony. See Tenn. Code Ann. § 39-17-432(b)(1).

As to setting the defendant's period of incarceration, the trial court did not adhere to subsection (b)(3) of the DFSZA, which provides: "A person convicted of violating this subsection (b), who is within the prohibited zone of a preschool, childcare center, public library, recreational center or park shall not be subject to additional incarceration as a result of this subsection (b) but shall be subject to the additional fines imposed by this section." All of the State's proof at trial showed that the defendant committed the attempted sale within the prohibited zone of a preschool and a day care center. Therefore, although the defendant's conviction was correctly classified as a Class B felony for purposes of setting a fine, thus making him subject to the additional fines for Class B felonies set out in section 39-17-432(b)(2), the exemptions of the DFSZA did not make him subject to a period of incarceration beyond that permitted for a Class C felony. The proper starting point for the trial court's sentencing determination was not the eight-year minimum sentence for a

Range I offender guilty of a Class B felony, but rather the three-year minimum sentence for a Range I offender guilty of a Class C felony. See Tenn. Code Ann. § 40-35-112(a)(2), (3) (2006).

We find that the remaining Adkisson factors are present as well. This court has held that a defendant's right to be sentenced in accordance with the law in effect on the date the offense was committed is substantial. State v. Blackmon, 78 S.W.3d 322, 335-36 (Tenn. Crim. App. 2001). There is no evidence before us that the defendant waived this error for tactical reasons. And where, as here, a substantial right of the accused has been adversely affected, consideration of the issue is necessary to prevent a miscarriage of justice. Adkisson, 899 S.W.2d at 643; see also State v. Ricky Lynn Payne, No. M2006-00762-CCA-R3-CD, 2007 WL 2042494, at *11-12 (Tenn. Crim. App. July 16, 2007) (where the defendant was not sentenced in accordance with the law in effect on the date the offense was committed, plain error review was appropriate).

Accordingly, we vacate the defendant's sentence and remand to the trial court for resentencing consistent with this opinion. On remand, the trial court should resentence the defendant as a Range I offender convicted of a Class C felony but without imposing any additional incarceration as a result of the DFSZA's enhancement of the defendant's conviction from a Class C to a Class B felony. The court should therefore begin with the presumptive sentence for a Range I offender convicted of a Class C felony and arrive at a final sentence after considering all relevant sentencing principles as required by law.

## CONCLUSION

We affirm the trial court's determinations that the rule of sequestration was not violated and that the Drug-Free School Zone Act applies to the defendant's conviction. However, we vacate the defendant's sentence and remand this cause to the trial court for further proceedings consistent with this opinion.

_____
ALAN E. GLENN, JUDGE