# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 13, 2013

## STATE OF TENNESSEE v. LYMUS LEVAR BROWN, III

**Appeal from the Circuit Court for Haywood County**
**No. 6710      Clayburn L. Peeples, Judge**

---

**No. W2012-02298-CCA-R3-CD  - Filed November 26, 2013**

---

A Haywood County jury convicted appellant, Lymus Levar Brown, III, of aggravated robbery.  The trial court sentenced him as a Range III offender to serve thirty years in the Tennessee Department of Correction, with a release eligibility of eighty-five percent.  *See* Tenn. Code Ann. § 40-35-501(k)(1) (release eligibility for aggravated robbery conviction). On appeal, he argues that: (1) the evidence supporting his conviction was insufficient; (2) the trial court erred by allowing a witness to testify despite a violation of the rule of sequestration; (3) the trial court erred by not granting him a mistrial or some other remedy for the State's failure to provide previously requested discovery; (4) his right to a speedy trial was violated; (5) the trial court erred by allowing the jury to hear that appellant was a convicted criminal; (6) the State failed to provide a sufficient chain of custody for the cellular telephone found at the crime scene; and (7) the trial court erred by considering his prior convictions during the sentencing hearing despite not having certified copies of said convictions.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Bob C. Hooper, Brownsville, Tennessee, for appellant, Lymus Levar Brown, III.

Robert E. Cooper, Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald Campbell and Larry Hardister, Assistant District Attorneys General, for appellee, State of Tennessee.

# OPINION

## I. Facts

This case concerns the January 18, 2011 aggravated robbery of Terica Gause, an employee of Cash Express in Brownsville, Tennessee. The Haywood County Grand Jury indicted appellant for the aggravated robbery, and the matter proceeded to trial in December 2011. A mistrial was declared, and the trial was reset for June 2012.

At trial, Terica Gause testified that she was working at Cash Express on January 18, 2011. Tamika Anderson was also working that day, but Ms. Anderson left the store to purchase supplies prior to the robbery. Ms. Gause said that the store normally opened at 9:30 a.m., but that day, a tall, black man entered the store between 9:00 and 9:30 a.m. He was wearing a black or blue jacket with white stripes and a black or blue ball cap. When shown a picture of appellant wearing a jacket, she testified that the jacket appellant was wearing "kind of look[ed] like" the one worn by the robber. Ms. Gause testified that the man asked whether the store cashed checks. When she responded affirmatively, the man pulled a gun and a black bag from his jacket, laid the gun on the counter, and told her to give him all of the money. Ms. Gause recalled that she was crying and terrified, but the man told her that he would not hurt her. She said that she pulled the cash drawer out to give him the money. Ms. Gause stated that she believed there was $525 in the drawer, plus change. She hit the store's panic button at some point during the robbery, and after the man left, she locked the door. At that point, she answered the store's telephone. The store's main office had accessed the store's security footage when Ms. Gause had pressed the panic button, and they were calling to verify her safety. The main office had also contacted the police. Ms. Gause testified that the man had left a cellular telephone on the floor of the store. She said that she and Ms. Anderson had closed the store the previous night, and they had vacuumed the floors at that time. There was not a cellular telephone on the floor the night before, and no one else had entered the store besides her, Ms. Anderson, and the robber.

On cross-examination, she agreed that she had previously said that the robber was taller than she was. She agreed that she was five feet, four inches tall and that the robber was between five feet, six inches and five feet, eight inches tall. She further agreed that she never identified appellant in a lineup.

Tamika Anderson, the store manager of the Cash Express, testified that she was not at the store during the January 18, 2011 robbery. She explained that she left the store to purchase supplies, and she took $25 from the cash drawer with her. Ms. Anderson testified that there would have been $515 in the drawer at that point. She recalled seeing a man standing outside the Cash Express, whom she described as a black male wearing a blue or

-2-

black jacket with white lettering that was trimmed in royal blue and a dark navy or black baseball cap. When shown a photograph of appellant wearing a jacket and cap, she said that the jacket and cap looked similar to those worn by the man outside of the store on the day of the robbery. Ms. Anderson said that there was not a telephone on the store's floor the night before or the morning of the robbery.

Brownsville Police Investigator Patrick Black testified that he investigated the robbery at the Cash Express store. He arrived at the store within two minutes of receiving the call about the robbery. Ms. Gause informed him that the robber had left a cellular telephone on the floor, and he took the telephone into evidence. Investigator Black testified that he obtained a search warrant for the telephone and had the telephone sent to the Tennessee Bureau of Investigation ("TBI") laboratory for "serology and fingerprint identification." Pursuant to the search warrant, Investigator Black downloaded photographs from the telephone, which were entered into evidence. He distributed the photographs to various agencies in West Tennessee and throughout the patrol division in an attempt to identify the person in the photographs, and this attempt was successful. Investigator Black also obtained the number associated with the telephone: 731-879-0475. Investigator Black testified that information he received from the TBI laboratory led him to obtain a search warrant for appellant's DNA. The search warrant was executed, and DNA swabs from appellant were sent to the TBI for testing.

Investigator Black testified that he arrested appellant at the Bureau of Probation and Parole in Jackson, Tennessee. Appellant told Investigator Black that he had never been to Brownsville and did not have anything to do with the robbery. Appellant said that he had sold his telephone several weeks earlier for forty-five to fifty dollars to a person named James. When asked whether appellant identified James to him, Investigator Black responded that appellant had James's driver's license.[1] Appellant did not indicate why he had James's driver's license. Investigator Black testified that Marquisha Lloyd was with appellant when he was arrested. He further testified that photographs of Ms. Lloyd were found on the cellular telephone associated with the robbery. Investigator Black testified that appellant said that "he had seen himself on the news and was waiting to come in to see his parole officer about it." Investigator Black said that the news footage was shown within a few days of the robbery and that appellant was arrested thirteen days after the robbery. Investigator Black testified that appellant indicated that he knew he was wanted by the police but did not turn himself in because he was scared.

---

[1] During a jury-out bench conference, Investigator Black testified that he made the assumption that the James to whom appellant allegedly sold his telephone and the James on the driver's license were the same person, but he said that appellant never actually told him that.

On cross-examination, Investigator Black said that he believed the photograph released to the media was one taken from the telephone, not from Cash Express's surveillance video. He testified that TBI Agent Brent Booth and a Jackson Police Department officer followed up on the information from appellant about James. They learned that the driver's license was stolen. Investigator Black agreed that Ms. Gause never positively identified anyone from the lineup he showed her and that he never found the jacket worn by appellant in the photographs.

Probation and Parole Officer Evelyn Hill testified that appellant had been under her supervision in January 2011. Appellant met with her at her office on January 11, 2011. As part of the normal procedure for meetings, he completed an information form that asked for his telephone number. The number he provided was 731-879-0475. Officer Hill testified that appellant came to her office on January 31, 2011, "at [her] insistence." She said that appellant had contacted her between January 11 and January 31 to tell her about a change to his address but not a change to his telephone number.

TBI Agent Brent Booth testified that he assisted Investigator Black with his investigation. His participation included transporting the telephone to the Nashville TBI laboratory and interviewing appellant. Agent Booth identified his name on the package containing the telephone and testified that it was the same telephone he had taken to the laboratory.

TBI Agent Nicholas Christian of the technical services unit testified that he performed a data retrieval on the telephone related to this case. He explained that he received the telephone from James Howard Patterson, who in turn had received it from Lelia Jackson. Agent Christian was responsible for generating the report detailing all of the data on the telephone, which was received as an exhibit.

TBI Agent Mark Dunlap of the serology and DNA unit testified that he tested the telephone for DNA. He said that he received the telephone from Lelia Jackson, who worked in the evidence receiving unit at the laboratory. Agent Dunlap explained that Ms. Jackson was responsible for assigning an exhibit number to the telephone, and he stated that her initials were on the package containing the telephone. He swabbed the telephone for DNA and developed a DNA profile that he entered into a database. From the information gathered from the database, Agent Dunlap requested a DNA sample from appellant. Once he received that, he compared the DNA from the telephone with appellant's DNA. Agent Dunlap testified that there were at least two people who contributed DNA to what was found on the phone. Appellant was the major contributor, and an unknown female was the minor contributor. On cross-examination, Agent Dunlap testified that there was no way to tell how long the DNA had been on the telephone.

Shanee Cohen testified that appellant was her ex-boyfriend. They had dated from March to November 2010. Sometime after the robbery, appellant called her. He told her that he had been involved in the robbery. Appellant also told her that one of the women working at the store and the woman's boyfriend were supposed to be involved. He never said anything about whether the woman's boyfriend actually participated in the robbery, but he said that the woman had gotten scared and left the store prior to the robbery.

On cross-examination, Ms. Cohen agreed that she had one prior conviction for theft. She also said that she called appellant's cellular telephone after they had broken up and that someone other than appellant answered the telephone.

Nimrod White testified that he had been incarcerated with appellant. Appellant told him that he had been at the Cash Express during the robbery, but appellant did not explicitly say that he had committed the robbery. Appellant told Mr. White that he had been standing outside and saw a woman leave the store and walk by him. He then went inside the store. Appellant indicated to Mr. White that he had a gun with him. Appellant also told Mr. White about a cellular telephone that was found at the store after the robbery. Appellant said that the only way the police could connect him to the telephone was through photographs and text messages sent to or received from a female friend of appellant the day before the robbery because appellant had told the police that he had sold the telephone. Mr. White testified that he believed the female friend's name was "Marquita or something like that" and that her last name was Lloyd. Mr. White agreed that he had a cellular telephone at the county jail and that appellant had used his telephone to call Marquisha Lloyd at a number ending in 7704. On cross-examination, Mr. White agreed that he had several aggravated burglary, burglary, theft, and vandalism convictions.

The State recalled Investigator Black. He testified that the cellular telephone found at Cash Express had one contact number with the last digits 7704, which was assigned to the name "Budda Bay." There were several text messages from Budda Bay on January 17, 2011, the day before the robbery. Investigator Black also testified that there were photographs of Marquisha Lloyd on the telephone, and at least one photograph had been taken the day before the robbery.

On cross-examination, Investigator Black agreed that some of the photographs on the telephone appeared to have been taken during a time period in which appellant was incarcerated. On re-direct examination, Investigator Black testified that the boots worn by appellant in the courtroom were similar to those in a photograph from the telephone. Following this testimony, the State rested.

On behalf of appellant, Janice Webb, a nurse who provided services at the Haywood County Criminal Justice Complex, testified that she had weighed appellant and taken his height the morning of her testimony. Appellant was six feet, one inch tall and weighed 204 pounds.

The State called Investigator Black as a rebuttal witness. He testified that the description of the robber sent to law enforcement agencies after the robbery stated that the robber was five feet, eleven inches tall. Investigator Black testified that the robber's description came from the victim, Terica Gause.

Following the close of proof and deliberations, the jury convicted appellant as charged. The trial court sentenced him as a Range III, persistent offender to serve thirty years in the Tennessee Department of Correction, with a release eligibility of eighty-five percent. *See* Tenn. Code Ann. § 40-35-501(k)(1) (release eligibility for aggravated robbery conviction).

## II. Analysis

### A. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to support his convictions because Terica Gause never identified appellant, TBI Agent Dunlap could not say when appellant's DNA was left on the telephone, and two of the witnesses whose testimony connected him to the offense had criminal records. The State responds that jury accredited the witnesses and that the evidence was sufficient to support appellant's conviction for aggravated robbery. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for aggravated robbery as indicted in this case, the State must have proven beyond a reasonable doubt that appellant intentionally or knowingly committed "theft of property from the person of another by violence or putting the person in fear" and that he accomplished the robbery "with a deadly weapon or by display of any article used or fashioned to lead the victim to believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1).

Viewed in the light most favorable to the State, the evidence presented at trial reveals that appellant entered the Cash Express store in Brownsville, Tennessee, on January 18, 2011, prior to the store's opening. He laid a gun on the counter and demanded money. Terica Gause, the only store employee present at the time, pulled out the cash drawer, and appellant took $515-525 from the drawer. Ms. Gause testified that she was terrified during the robbery. Ms. Gause described the jacket and cap worn by the robber, and Tamika Anderson, the store manager, testified that she saw a similarly dressed man standing outside the store when she left that morning. After the robbery, Ms. Gause found a cellular telephone on the floor of the store. Both Ms. Gause and Ms. Anderson testified that it had not been there the night before. Appellant's DNA was found on the telephone, and the number assigned to the telephone was the same number appellant had used as his contact number when he met with his probation officer on January 11, 2011. Furthermore, pictures on the telephone depicted appellant wearing clothing similar to what the robber had worn, and some of the pictures were of Marquisha Lloyd, a known companion of appellant. Ms. Lloyd was with appellant when he was arrested, and according to Nimrod White, appellant contacted

her from jail. Text messages from a number ending in 7704 were found on the telephone dated the day before the robbery, and Mr. White testified that Ms. Lloyd's telephone number ended in 7704. Mr. White also testified that appellant told him about the robbery in a round-about fashion. In appellant's conversation with Mr. White, appellant placed himself outside of the store and inside of the store with a weapon, but he never explicitly said that he was responsible for the robbery. However, appellant told Shanee Cohen, a former girlfriend, that he had been involved with the robbery. Thus, appellant was connected to the aggravated robbery through his own words and through the telephone found at the scene. Regarding appellant's challenges to the sufficiency of the evidence, Ms. Gause may have been mistaken about appellant's height, but she was terrified and crying during the robbery. Agent Dunlap could not say when appellant's DNA was left on the telephone, but he testified that appellant was the only major contributor to the DNA found thereon. Mr. White and Ms. Cohen both had prior criminal convictions, which might have weighed against their credibility, but the jury accredited their testimony, as was their prerogative. We conclude that the proof was sufficient for any rational jury to find appellant guilty of aggravated robbery beyond a reasonable doubt.

## B. Rule of Sequestration

Appellant complains that the trial court should not have allowed Evelyn Hill to testify after she had violated the rule of sequestration. *See* Tenn. R. Evid. 615. The State responds that the trial court was within its discretion when it allowed her testimony. We agree with the State.

Tennessee Rule of Evidence 615 provides that a trial court shall exclude witnesses from the courtroom at the request of a party to an action. "The purpose of the rule is to prevent one witness from hearing the testimony of another and adjusting his testimony accordingly." *State v. Harris*, 839 S.W.2d 54, 68 (Tenn. 1992). The text of the rule does not provide a remedy for a violation; instead, courts have the discretion to fashion a remedy appropriate to the circumstances. *See State v. Black*, 75 S.W.3d 422, 424 (Tenn. Crim. App. 2001) (citing *State v. Anthony*, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992)). One possible sanction is the exclusion of the violating witness's testimony. *See id.* "The decision to exclude or allow the testimony is a matter within the discretion of the trial court, subject to a showing of abuse and prejudice to the complaining party." *Id.* at 424-25 (citing *State v. Chadwick*, 750 S.W.2d 161, 166 (Tenn. Crim. App. 1987)). The Advisory Commission Comments to Rule 615 provide the following guidance: "If a witness inadvertently and unintentionally hears some trial testimony, the sense of the rule would permit the judge to allow the witness to testify if fair under the circumstances." Tenn. R. Evid. 615, Advisory Comm'n Cmt.

In this case, the trial transcripts do not clearly reflect that any party requested the sequestration of the witnesses; however, the motion for new trial transcript includes a comment by defense counsel that the rule had been called. In addition, when the matter was discussed at a bench conference, the State responded as if the rule of sequestration had been properly requested under Rule 615.

During the third witness's testimony, that of Investigator Black, the State realized that Evelyn Hill, appellant's probation officer, was in the courtroom. The State immediately brought it to the attention of the court, and the court ordered Ms. Hill to leave the courtroom. Defense counsel objected to Ms. Hill's testifying later in the trial, and the court overruled the objection. The court reasoned that nothing said to that point in the trial would affect Ms. Hill's testimony. Having reviewed the record, we agree with the trial court. Ms. Hill's testimony related to appellant's contact information and how he came to be at her office the day of his arrest. The State brought her presence in the courtroom to the court's attention just before Investigator Black began discussing appellant's arrest at Ms. Hill's office. None of the prior witnesses' testimonies had any bearing on that of Ms. Hill. Considering that the purpose of Rule 615 is to prevent a witness from changing his or her testimony according to other testimony presented, we conclude that the trial court did not abuse its discretion by allowing her to testify because none of the testimony presented to that point could have had any influence on Ms. Hill's testimony. Furthermore, appellant has made no showing that Ms. Hill's violation of the rule was prejudicial to him. *See Black*, 75 S.W.3d at 424-25. Therefore, appellant's argument is without merit.

## C. Failure of the State to Provide Discovery

Appellant argues that the trial court should have dismissed the indictment because of the State's alleged failure to comply with Tennessee Rule of Criminal Procedure 16, which governs the discovery process. Specifically, appellant contends that the State failed to provide the driver's license issued to a person named James, which appellant had in his possession when he was arrested.[2] The State responds that the trial court did not abuse its discretion by denying appellant's motion to dismiss the indictment. Upon review, we conclude that appellant has waived this issue.

During the trial, appellant moved the court to dismiss the indictment based on the State's failure to disclose exculpatory evidence. While not defined as such during the jury-out bench conference on the issue, the argument advanced by defense counsel was that of a

---

[2] In his brief, appellant also contends that the State failed to provide the defense with appellant's oral statement to Investigator Black. However, no objection was made on this basis at trial. Therefore, this argument is waived. *See* Tenn. R. App. P. 36(a).

*Brady* violation. *See Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the State's suppression of exculpatory evidence is a due process violation). In contrast, a Rule 16 violation does not require that undisclosed evidence be exculpatory, and Rule 16 allows a court to fashion remedies other than dismissing the indictment. *See* Tenn. R. Crim. P. 16. On appeal, appellant advances a Rule 16 argument. "In this jurisdiction, a party is bound by the ground asserted when making an objection," and changing theories on appeal constitutes waiver of the issue. *State v. Adkisson*, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). Because appellant did not argue below that the State had violated Rule 16 and instead argued that the State failed to disclose exculpatory evidence, we conclude that appellant has waived appellate review of this issue.

### D. Speedy Trial Violation

Appellant contends that his right to a speedy trial was violated when he was tried sixteen and one-half months after his arrest. The State responds that the factors of the speedy trial analysis do not weigh in appellant's favor. We agree with the State.

The Sixth Amendment to the United States Constitution states that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This provision was made applicable to the states through the Fourteenth Amendment to the United States Constitution. *State v. Simmons*, 54 S.W.3d 755, 758 n.4 (2001) (citing *Klopfer v. North Carolina*, 386 U.S. 213 (1967)). Likewise, the Tennessee Constitution provides the same guarantee for criminal defendants. *See* Tenn. Const. art. I, § 9. "The speedy trial guarantee is designed to protect the accused from oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that the accused's defense will be impaired by dimming memories or lost evidence." *Simmons*, 54 S.W.3d at 758. The right to a speedy trial is triggered when an accused is arrested or when a grand jury issues a formal accusation or indictment. *State v. Hudgins*, 188 S.W.3d 663, 667 (Tenn. Crim. App. 2005) (citing *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997)). We review a trial court's determination of whether a defendant's right to a speedy trial was violated under an abuse of discretion standard. *Hudgins*, 188 S.W.3d at 667.

In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court set forth four factors to be considered when reviewing an alleged violation of an accused's right to a speedy trial, including the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *See Simmons*, 54 S.W.3d at 759. Our supreme court has cited with approval the application of the *Barker* analysis in Tennessee. *Simmons*, 54 S.W.3d at 759 (citing *State v. Bishop*, 493 S.W.2d 81, 83-85 (Tenn. 1977)). If, after applying the *Barker* balancing test, a court determines that an accused's right to a

speedy trial has been violated, "the remedy is reversal of the conviction and dismissal of the criminal charges." *Id.*

Considering first the length of the delay, we note that unless "there is some delay [that] is presumptively prejudicial, it is not necessary to inquire into the other balancing factors of the speedy trial analysis." *Id.* (citing *Barker*, 407 U.S. at 530; *State v. Wood*, 924 S.W.2d 342, 346 (Tenn. 1996)). A delay following a formal accusation must "generally" be one year or longer to trigger a speedy trial analysis. *Id.* If this threshold is crossed, a reviewing court must employ a balancing test to determine the merits of the speedy trial issue. *State v. Bates*, 313 S.W.3d 265, 270 (Tenn. Crim. App. 2009).

In this case, appellant was arrested on January 31, 2011, and indicted on May 16, 2011. His case was originally tried on December 1, 2011, but resulted in a mistrial due to a mistake by the State. The matter was reset for March 29, 2012. On that day, the State requested an amendment to the indictment, which the trial court granted. The trial court gave appellant the option to proceed with the trial or reset the trial. Appellant chose to reset the trial, and based on the parties' calendars and the court calendars, the case was reset to June 14, 2012. Thus, appellant's trial was clearly more than a year after his arrest; however, as his trial was four and one-half months past the year marker, the length of the delay weighs against the State but not heavily.

Having determined that the length of the delay was sufficient to trigger the speedy trial analysis, we must now inquire as to the reasons for the delay. Reasons for delay fall within four identifiable categories: "(1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense." *State v. Vickers*, 985 S.W.2d 1, 5-6 (Tenn. Crim. App. 1997) (citing *Wood*, 924 S.W.2d at 346-47). While the reasonableness of the length of the delay is commensurate to the complexity and nature of the case, the presumptive prejudice inherent in the delay intensifies over time. *Simmons*, 54 S.W.3d at 759 (citing *Doggett v. United States*, 505 U.S. 647, 652 (1992); *Utley*, 956 S.W.2d at 492; *Wood*, 924 S.W.2d at 346).

Here, the State caused the first delay by its mistake at the first trial, on December 1, 2011, which resulted in a mistrial. However, such a delay was necessary for the fair prosecution of the case to prevent a miscarriage of justice. The second delay occurred when, in response to the State's amendment of the indictment on March 29, 2012, appellant requested that the case be reset. If he had proceeded to trial on that day, the trial would have been fourteen months after his arrest. He chose to reset the trial, and because of the calendars involved, the case could not be tried until June 14, 2012. Thus, the second delay

was caused by the State's amending the indictment but was acquiesced to by appellant. Therefore, the factor does not weigh heavily against the State.

The third factor we must consider is whether appellant asserted his right to a speedy trial. *Simmons*, 54 S.W.3d at 760 (citing *Barker*, 407 U.S. at 531-32). In this case, appellant's motion to dismiss based on a speedy trial violation, filed May 11, 2012, was the first assertion of his right to a speedy trial. Considering that "the timeliness of the demand for a speedy trial is a factor to be considered when determining whether the defendant has been denied his speedy trial right," *State v. Harold Wayne Nichols*, E2008-00169-CCA-R3-CD, 2009 WL 2633099 (Tenn. Crim. App. Aug. 27, 2009) (citing *Simmons*, 54 S.W.3d at 760 (Tenn. 2001); *Bishop*, 493 S.W.2d at 84), we note that this assertion came fifteen and one-half months after his arrest and that he was tried approximately one month after the assertion. The fact of his assertion weighs in his favor, however.

Finally, we analyze the prejudice to appellant caused by the delay. Appellant asserts that the delay made it more difficult to find James, the person to whom appellant allegedly sold his cellular telephone. The trial court reasoned that any delay would actually have been beneficial in this regard. Furthermore, the proof at trial showed that appellant had been using his telephone the day before the robbery. Appellant has not provided any indication that he was actually prejudiced by the delay. Taking all of the factors into consideration, we conclude that appellant's right to a speedy trial was not violated.

### E. Tennessee Rule of Evidence 404(b)

Appellant challenges the trial court's ruling on his motion in limine to exclude testimony pursuant to Tennessee Rule of Evidence 404(b) regarding his status as a convicted criminal, specifically the testimony of probation officer Evelyn Hill and a document from the probation office containing appellant's contact information.[3] The State responds that the trial court did not abuse its discretion in admitting the evidence. We agree with the State.

Tennessee Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is generally not admissible "to prove the character of a person in order to show action in conformity with the character trait." However, evidence of other crimes, wrongs or acts may be admissible where it is probative of a purpose other than the defendant's propensity.

---

[3] Both appellant and the State have treated this matter as a Rule 404(b) issue. However, if it had been addressed as a Tennessee Rule of Evidence 401 and 403 issue instead, the evidence would nonetheless have been admissible as the probative value was not substantially outweighed by the danger of unfair prejudice. Regardless, any error in the admission of this evidence is harmless in light of the overwhelming evidence of appellant's guilt. *See* Tenn. R. App. P. 36(b).

Tenn. R. Evid. 404(b). While Rule 404(b) does not enumerate the exceptions under which evidence of prior crimes, wrongs, or acts may be admitted, our courts have held that such evidence may be admissible to show another purpose such as motive, intent, guilty knowledge, identity of the defendant, absence of mistake, or the existence of a common scheme. *See, e.g., State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004); *Collard v. State*, 526 S.W.2d 112, 114 (Tenn. 1975). To admit such evidence, Rule 404(b) specifies the following:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

Should a review of the record indicate that the trial court substantially complied with the requirements of Rule 404(b), the trial court's admission of the challenged evidence will remain undisturbed absent an abuse of discretion. *State v. James*, 81 S.W.3d 751, 759 (Tenn. 2002); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008) (*quoting State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

Appellant moved the court to exclude Ms. Hill's testimony because, as he reasoned, evidence that appellant had been on parole was equivalent to evidence of prior crimes, wrongs, or acts. In a jury-out hearing prior to the first trial in December 2011, the trial court ruled that "the probative value of the evidence outweighed the prejudicial value." When appellant renewed his motion to exclude the evidence prior to the second trial, the trial court determined that Ms. Hill's testimony and the document accompanying her testimony were highly probative of appellant's identity as the perpetrator. In addition, the trial court gave the jury an instruction in its jury charge to disregard the information that appellant had been on parole, stating that it should not be considered by the jury for any purpose.

-13-

Our review of the record indicates that the trial court substantially complied with the dictates of Rule 404(b). The trial court determined that the evidence was admissible to prove identity, which is a recognized exception to the general exclusion of evidence of prior crimes, wrongs, or acts. *See Berry*, 141 S.W.3d at 582. Furthermore, the trial court ruled that the probative value was not outweighed by the danger of unfair prejudice, and the trial court gave a limiting instruction to the jury for it not to consider that appellant had been on parole. Therefore, we conclude that the trial court did not abuse its discretion in admitting the evidence.

## F. Chain of Custody

Appellant argues that the State did not establish a sufficient chain of custody for the cellular telephone found at the crime scene because TBI employee Lelia Jackson did not testify and because Agent Dunlap did not state where in the chain of custody he received the telephone. The State responds that it sufficiently established the chain of custody so as to "reasonably assure the identity of the evidence and its integrity."

The determination of whether the State has properly established the chain of custody of evidence is a matter left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *See State v. Cannon*, 254 S.W.3d 287, 295 (Tenn. 2008). Tennessee Rule of Evidence 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." As our supreme court has held, "as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody." *Cannon*, 254 S.W.3d at 296 (quoting *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000)). "The purpose of the chain of custody is to 'demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" *Scott*, 33 S.W.3d at 760 (quoting *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). The State should sufficiently prove each link in the chain of custody, but the State is not required to prove the identity of tangible evidence beyond all possibility of doubt nor must it exclude every possibility of tampering. *Cannon*, 254 S.W.3d at 296. In addition, the State's failure to call as a witness each person who handled an item does not necessarily preclude the admission of the evidence. *Id.* "Accordingly, when the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence." *Id.* The trial court should not admit an item into evidence if the State fails to provide sufficient proof of the chain of custody, unless the identity and integrity of the item can be established by other means. *Id.*

In this case, Investigator Black testified that he retrieved the telephone from the crime scene. Agent Booth testified that he took the telephone to the TBI laboratory, and he further testified that the telephone in the courtroom was the same one he had taken to the laboratory. Agent Christianson testified that he received the telephone from Agent Patterson, who had received it from Lelia Jackson, a TBI employee. Agent Christianson said that he returned the telephone to Ms. Jackson. Agent Dunlap testified that he recognized Ms. Jackson's initials on the telephone's packaging. He also explained that Ms. Jackson worked in the evidence receiving unit and was responsible for assigning an exhibit number to the evidence. Ms. Jackson did not testify, and Agent Dunlap did not definitively state that he received the telephone from Ms. Jackson. The State is not required to present testimony from every person in the chain, and it does not have to prove the identity of the evidence beyond all possibility of doubt. *Cannon*, 254 S.W.3d at 296. Here, the State presented evidence regarding each link in the chain of custody, even though it did not present testimony from each person in the chain. In addition, there was testimony that the telephone admitted as an exhibit was the same one found at the crime scene. Therefore, we conclude that the State sufficiently established the chain of custody.

## G. Certified Copies of Convictions

Appellant argues that the trial court erred by considering uncertified copies of his prior convictions during the sentencing hearing via the presentence report. However, as the State responds, appellant did not object to the admission of the presentence report during the sentencing hearing. Therefore, he has failed to preserve this issue for appellate review. *See* Tenn. R. App. P. 36(a).

Furthermore, appellant has not argued specifically for plain error review. Even if we construed his appellate argument as a request for plain error review, he has not established the five factors necessary for this court to find plain error. Our supreme court formally adopted this court's *Adkisson* test for reviewing claims of plain error:

> The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). To rise to the level of "plain error," an error must [have

been] of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642. All five factors must be established by the record before a court will find plain error. *Smith*, 24 S.W.3d at 282. Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record.

In this case, appellant has failed to establish that a clear and unequivocal rule of law has been breached. Reliable hearsay is admissible with certain qualifications during sentencing hearings, *see* Tenn. Code Ann. § 40-35-209(b), and "[t]his court has consistently held the presentence report to be reliable hearsay," *State v. Adams*, 45 S.W.2d 46, 59 (Tenn. Crim. App. 2000) (citing *State v. Baker*, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997)). "Furthermore, this court has held that certified copies of convictions are not necessary to prove a prior criminal history; thus, courts can rely upon the presentence report." *Id.* (citing *State v. Richardson*, 875 S.W.2d 671, 677 (Tenn. Crim. App. 1993)); *see also State v. Tyrone Ralph Wright*, No. M2010-02096-CCA-R3-CD, 2012 WL 601332, at *18-19 (Tenn. Crim. App. Feb. 23, 2012), *perm. app. denied* (Tenn. June 25, 2012) (concluding that the trial court properly relied on presentence report and preparer's testimony when the State did not present certified copies of two of the defendant's six prior convictions). Thus, because one of the five factors necessary to establish plain error is absent, appellant is without relief as to this issue.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE