IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

## ROBERT ANTHONY FUSCO v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40900753        William R. Goodman, III, Judge**

_____

### No. M2016-00825-CCA-R3-PC

_____

The Petitioner, Robert Anthony Fusco, filed a pro se petition for post-conviction relief, alleging various instances of ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. On appeal, the Petitioner contends that the post-conviction court erred by limiting his questioning of two police officers at the hearing. He also contends that his trial counsel was ineffective in a number of ways, including by failing to file motions to suppress, to ensure that the rule of sequestration was stringently enforced, to challenge the Petitioner's convictions on double jeopardy grounds, to contest errors at the sentencing hearing, and to challenge acts of prosecutorial misconduct. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Robert Anthony Fusco, Wartburg, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; John W. Carney, Jr., District Attorney General; and Helen O. Young, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## I.  Factual Background

### A.  Trial

On direct appeal, this court noted that the Petitioner and his co-defendant, Kyle Swim, formed a plan to rob the Golden Eagle jewelry store in Clarksville, which was

owned by John and Elke Gilreath. State v. Fusco, 404 S.W.3d 504, 512 (Tenn. Crim. App. 2012). They concocted a plan to "break into the Gilreaths' home, abduct Mr. Gilreath while holding Mrs. Gilreath hostage, and force Mr. Gilreath to take them to the jewelry store after hours to retrieve the valuables inside." Id. On the morning of November 1, 2007, Swim left the Petitioner, who was armed with two handguns, near the victims' home. Id. The Petitioner entered the home and hid throughout the day, exchanging text messages with Swim to keep apprised of the victims' whereabouts. Id. Around 5:10 p.m., after the victims had returned home, Mr. Gilreath went to the mailbox, and Mrs. Gilreath went into the laundry room. Id. at 513. The Petitioner entered the laundry room, pointed a gun at Mrs. Gilreath, and threatened to kill her. Id. The Petitioner then put Mrs. Gilreath "in a chokehold" and pointed the gun at her head. Id. She screamed, and as Mr. Gilreath ran into the kitchen, the Petitioner pointed the gun at him and threatened to kill both victims if Mr. Gilreath moved. Id. Mr. Gilreath responded that he would get his gun and kill the Petitioner and ran to his car to get his gun. Id. While Mr. Gilreath was gone, the Petitioner slammed Mrs. Gilreath into a door and pressed the gun to her head. Id. She begged for her life, but the Petitioner continued to threaten to kill her. Id. He grabbed at her Rolex watch. Id. As she moved her arm, the Petitioner "put the gun against it and fired; the bullet went through her arm and into her chest." Id. The Petitioner pushed her face into the floor, then he fled. Id.

The police ultimately located the Petitioner and found a cellular telephone and a .25 mm handgun on the Petitioner's person. Id. at 513-14. When the police interviewed the Petitioner, he initially denied any involvement in the crimes. Id. at 514. However, after the police showed him incriminating text messages that were found on his cellular telephone, the Petitioner admitted his involvement in the crimes but claimed that he had not intended to shoot Mrs. Gilreath and had instead intended to fire only a warning shot. Id.

The jury convicted the Petitioner of two counts of especially aggravated kidnapping, conspiracy to commit aggravated robbery, conspiracy to commit aggravated kidnapping, attempted aggravated robbery, and aggravated burglary. The trial court merged the especially aggravated kidnapping convictions. The trial court sentenced the Petitioner as a Range II, multiple offender to ten years for each conspiracy conviction, thirty-five years for the especially aggravated kidnapping conviction, ten years for the attempted aggravated robbery conviction, and ten years for the aggravated burglary conviction. The trial court ordered the sentences for the conspiracy convictions to be served concurrently with each other but consecutively to the remaining sentences, and also ordered that the remaining sentences were to be served consecutively to each other for a total effective sentence of sixty-five years. Id. at 514. On direct appeal, this court remanded for a merger of the conspiracy convictions and affirmed the Petitioner's convictions and sentences in all other respects. Id. at 549.

## B. Post-Conviction

Thereafter, the Petitioner, acting pro se, filed a timely petition for post-conviction relief, alleging in pertinent part that his trial counsel was ineffective by failing to file motions to suppress the Petitioner's statement to the police, to ensure that the rule of sequestration was stringently enforced, and to contest sentencing errors. The post-conviction court appointed an attorney to represent the Petitioner, and an amended petition was filed, alleging that trial counsel was ineffective by failing to challenge the police's warrantless search of the Petitioner's cellular telephone. The Petitioner then filed a motion asking the court to dismiss his attorney and either appoint a new attorney or allow him to proceed pro se. The Petitioner alleged that his attorney refused to pursue new grounds of ineffective assistance of counsel suggested by the Petitioner, namely that his trial counsel failed to challenge the Petitioner's convictions based on a double jeopardy violation and failed to contest acts of prosecutorial misconduct. The same day, the Petitioner filed a pro se amended petition, raising the ineffective assistance issues relating to double jeopardy and prosecutorial misconduct, as well as reiterating the issue regarding the warrantless search of his cellular telephone.

At the post-conviction hearing, the Petitioner chose to proceed pro se. The first witness, Officer Bill Van Beber, III, testified that he and Detective Barrett took the Petitioner into custody on November 1, 2007. Upon questioning by the officers, the Petitioner denied having any weapons. However, Officer Van Beber found a .25 caliber pistol and a cellular telephone on the Petitioner's person. Officer Van Beber had no further interaction with the Petitioner after he was transported to "district two."

Officer Alan Charvis initially testified that because a "long time" had passed, he did not remember interviewing the Petitioner on November 1, 2007. After he was shown his "follow-up report," he recalled that the Petitioner "was very evasive" at the beginning of the interview. Officer Charvis acknowledged that he searched the Petitioner's cellular telephone and found text messages linking the Petitioner "to the victim and to the crime." Officer Charvis then went into the interview room and showed the text messages to the Petitioner as "part of the interview process." Afterward, the Petitioner "sank down in the chair and put [his] head down." Officer Charvis thought the text messages "played a part in" the Petitioner's eventually making incriminating statements. Officer Charvis stated that "[a]t that time," searching an arrestee's cellular telephone without a search warrant was standard procedure. Officer Charvis did not recall when the search warrant for the cellular telephone was issued.

The Petitioner's trial counsel testified that he was hired by the Petitioner in May 2009, that the Petitioner's trial took place in September 2009, and that he represented the Petitioner until the conclusion of the direct appeal. He acknowledged that the Petitioner's case was "very extensive" but said that he had sufficient time to prepare the case.

Trial counsel recalled that a detective testified the Petitioner was "very evasive during questioning" and initially did not want to connect himself with the crime. However, detectives searched the Petitioner's cellular telephone on the night of his arrest and "turned up evidence or information that eventually led to" the Petitioner's making incriminating statements. Trial counsel said that he thought the issue regarding the search of a cellular telephone incident to arrest had not been raised in Tennessee at the time of the Petitioner's trial and that "we were still operating on the basic search incident to arrest case law that had been around for decades." Based upon his research, trial counsel did not think a motion to suppress would be successful. Trial counsel acknowledged that since the Petitioner's trial and direct appeal, the law regarding a warrantless search of an arrestee's cellular telephone had changed with the issuance of Riley v. California, 134 S. Ct. 2473 (2014).

Trial counsel acknowledged that the information on the Petitioner's cellular telephone was a "vital key piece of evidence" regarding "some of the charges." Trial counsel filed a "motion in limine to prohibit introduction of the text messages until a proper foundation had been laid . . . ." He did not object to the text messages at trial because the State sufficiently established the chain of custody.

Trial counsel said that he did not think the State's chances of obtaining a conviction would have been "slim" if the text messages had not been introduced, but he acknowledged that the evidence was critical to the conspiracy charges. He explained that the testimony of Mr. and Mrs. Gilreath was the most damaging evidence against the Petitioner.

Trial counsel could not recall at what point in the proceedings the police advised the Petitioner of his Miranda rights, but he stated that his "analysis at the time was it was sufficient." Trial counsel acknowledged that the Petitioner's statements to the police implicated the Petitioner in the crime and connected some of the evidence to him. Trial counsel recalled that the State did not delve into the Petitioner's statement much during its case-in-chief and instead used his statement primarily as rebuttal proof.

Trial counsel could not recall the order in which the witnesses testified at trial. Trial counsel said that the testimony of Mr. and Mrs. Gilreath was similar, but they did not sound "tailored" or as if "they had conspired to make the same statement." Trial counsel acknowledged that Tennessee Rule of Evidence 615, the rule of sequestration, provided that the State's representative or the victim was required to testify before being allowed to remain in the courtroom during other testimony. He maintained that the trial court made the ultimate decision whether to allow witnesses to remain in the courtroom. He recalled advising the trial court early in the trial that he did not "consent[] to everybody being here in the courtroom" but acknowledging that "the State did have a

right to have a representative there." Trial counsel conceded that he did not know why he did not challenge the State's violation of Rule 615.

Trial counsel said that the Petitioner's sentencing range was a "big issue." Trial counsel acknowledged that the trial court, not the jury, found the enhancement factors but stated that the trial court did not violate Blakely v. Washington, 542 U.S. 296, 303 (2004). Trial counsel said that he challenged some of the out-of-state convictions and juvenile adjudications used to enhance the Petitioner's sentencing range and that he raised the issue on direct appeal. Trial counsel could not recall if the State's notice of enhancement was timely.

Trial counsel said that after the sentencing hearing, he learned either that the Petitioner had not been represented by an attorney on some of his previous convictions or that the record on the previous convictions was silent as to whether the Petitioner had been represented by an attorney. Regardless, trial counsel recalled the Petitioner had acknowledged during his trial testimony that he had specific prior convictions and reasoned that "it would have been disingenuous" to challenge any convictions the Petitioner had already acknowledged.

Trial counsel said that the Petitioner was indicted under multiple theories of kidnapping the same victim, Mrs. Gilreath, and that he raised the issue of merger at the sentencing hearing. However, trial counsel did not raise any further double jeopardy issues.

Detective Kenny Bradley testified that he was the lead detective in the Petitioner's case and that he interviewed the Petitioner on the date of his arrest. After the Petitioner "was transported to district two," the police placed the Petitioner in an interview room and asked if he wanted water or food. At the beginning of the interview, Detective Bradley advised the Petitioner of his Miranda rights, and the Petitioner waived his rights.

Detective Bradley said that the police searched the Petitioner's cellular telephone "[t]o obtain information relating to the incident," that the police found incriminating text messages, and that the Petitioner did not admit any involvement in the crimes until he was confronted with the text messages. Detective Bradley acknowledged that the police did not have a warrant to search the Petitioner's cellular telephone on the day of his arrest, noting that the search warrant for the telephone was issued on November 19, 2007.

Detective Bradley acknowledged that he was "the State's designated representative" at trial and that he was present when the other State's witnesses testified.

On cross-examination, Detective Bradley said that the Petitioner's cellular telephone was a "flip phone." He maintained that at the time of the Petitioner's arrest, the police were permitted to search cellular telephones incident to arrest.

Detective Sean Averitt testified that he was present when the Petitioner was arrested and that the Petitioner was searched incident to arrest. Detective Averitt said that he personally did not advise the Petitioner of his Miranda rights.

Thereafter, the Petitioner recalled trial counsel, who acknowledged that he had examined the timing of the Miranda warnings. Trial counsel found no issue that warranted the filing of a motion to suppress.

Trial counsel said that in every trial, he generally requested the sequestration of witnesses. He acknowledged that the trial court did not require the State's representative(s) to testify first and that he did not request that the State's witnesses be required to testify in any particular order to prevent the witnesses from hearing each other's testimony.

Trial counsel did not object to the Petitioner's prior convictions being introduced during the sentencing hearing; however, he filed a motion to preclude the trial court from considering some of the convictions for range enhancement purposes. After the sentencing hearing, trial counsel decided that he should have objected to the convictions that did not show the Petitioner was represented by counsel; accordingly, trial counsel raised that issue on direct appeal and argued for plain error relief.[1] Trial counsel said that the trial court, not the jury, found the enhancement factors but that no Blakely violation occurred because the Petitioner's case occurred after the Sentencing Act was amended to provide that enhancement factors were "advisory rather than mandatory."

Trial counsel acknowledged that the State charged the Petitioner with three counts of especially aggravated kidnapping of Elke Gilreath and with two counts of conspiracy. The trial court merged the especially aggravated kidnapping convictions, and the conspiracy charges were merged on direct appeal. Trial counsel did not raise any further double jeopardy issues. Trial counsel acknowledged that he did not object to the State's closing arguments or any other acts of prosecutorial misconduct.

---

[1]On appeal, the Petitioner cited Burgett v. Texas, 389 U.S. 109 (1967), and State v. Tansil, 72 S.W.3d 665 (Tenn. Crim. App. 2001), and argued that "the trial court erred by using his prior Florida convictions to enhance his range without an affirmative showing that the [Petitioner] was represented by counsel at the time of these convictions." Fusco, 404 S.W.3d at 531.

At the conclusion of the hearing, the post-conviction court denied the petition, finding that the Petitioner failed to establish that trial counsel was ineffective. On appeal, the Petitioner contends that the post-conviction court erred by limiting his questioning of two police officers at the hearing. He also contends that his trial counsel was ineffective in a number of ways, including by failing to file motions to suppress, to ensure that the rule of sequestration was stringently enforced, to challenge the Petitioner's convictions on double jeopardy grounds, to contest errors at the sentencing hearing, and to challenge acts of prosecutorial misconduct.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 this S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

- 7 -

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

## A. Suppression of Statement

First, we will address the Petitioner's contention that the trial counsel should have filed a motion to suppress his statement because the police began questioning him before advising him of his Miranda rights. The State responds that the record does not reflect the Petitioner gave any incriminating statements prior to being advised of his rights. We agree with the State.

In Missouri v. Seibert, 542 U.S. 600, 609 (2004), "a plurality of the Supreme Court held inadmissible a defendant's post-Miranda confession because the police had first obtained a pre-Miranda confession, rendering the subsequent Miranda warnings ineffective." Charles Nash v. State, No. E2012-02511-CCA-R3-PC, 2013 WL 5314599, at *7 (Tenn. Crim. App. at Knoxville, Sept. 20, 2013). In the instant case, the post-conviction court found that the record, including the transcript of the Petitioner's pretrial statement, reflects that the Petitioner was advised of his Miranda rights prior to giving his statement and that the Petitioner waived those rights. The post-conviction court further found that trial counsel was not deficient for failing to file a motion to suppress.

We note that although the Petitioner contends the proof adduced at the post-conviction hearing reveals he was not advised of his Miranda rights, our review of the record belies this contention. Detective Bradley testified that he advised the Petitioner of his Miranda rights at the beginning of the interview, which was confirmed by the transcript of the Petitioner's interview. Moreover, the Petitioner acknowledges in his brief that he did not give an incriminating statement until after he was shown the text messages on his cellular telephone. The transcript of the Petitioner's interview confirms that the Petitioner was shown the text messages after he was advised of his Miranda rights. Further, trial counsel testified that no reason existed to file a motion to suppress based upon the timing of the Miranda rights. We conclude that trial counsel was not ineffective by failing to file a motion to suppress the Petitioner's statement. The Petitioner is not entitled to relief on this issue. See Jeremiah Ginn v. State, No. M2007-01270-CCA-R3-PC, 2008 WL 2780593, at *5 (Tenn. Crim. App. at Nashville, July 18, 2008).

## B. Questioning of Detectives

In a related issue, the Petitioner contends that the post-conviction court erred by refusing to allow him to question Detectives Bradley and Averitt about the timing of the Miranda warnings. In response, the State notes that the post-conviction court found that the admissibility of the Petitioner's statement was addressed on direct appeal. The State acknowledges that this finding was erroneous but asserts that the error was harmless, noting Detective Bradley's testimony that he advised the Petitioner of his Miranda rights at the beginning of the interview.

We agree that the post-conviction court erroneously concluded that the Petitioner raised the issue of the admissibility of his statement on direct appeal. See Fusco, 404 S.W.3d at 504; see also Laraiel Winton v. State, No. E2006-02392-CCA-R3-PC, 2007 WL 2438112, at *3 (Tenn. Crim. App. at Knoxville, Aug. 29, 2007). However, we also agree that the post-conviction court's erroneous ruling did not prevent the Petitioner from presenting proof regarding his claim. Although the post-conviction court refused to allow the Petitioner to question the officers about "police tactics," the Petitioner nevertheless asked Detective Bradley at what point the Petitioner was advised of his Miranda rights. The Petitioner did not ask any of the witnesses if he was subjected to questioning prior to being advised of his Miranda rights or if he made any incriminating statements prior to being advised of his Miranda rights. Indeed, the proof adduced at the hearing revealed that the Petitioner did not make any incriminating statements until after he was shown the text messages on his cellular telephone, which occurred after the Petitioner was advised of his Miranda rights. Moreover, the Petitioner chose not to testify about the circumstances of his arrest and subsequent interrogation. See Tenn. Code Ann. § 40-30-110(a) (providing that generally "[t]he petitioner shall appear and give testimony at the evidentiary hearing if the petition raises substantial questions of fact as to events in which the petitioner participated"). We conclude that the post-conviction court's error in curtailing the Petitioner's questioning of the detectives was harmless. See Tenn. R. App. P. 36(b).

## C. Sequestration of Witnesses

Next, the Petitioner contends that trial counsel was ineffective by failing to request the rule of sequestration and failing to ensure that the State's designated representative(s) testified first to prevent them from hearing each other's testimony. The State responds that nothing in the record suggests Detective Bradley or the victims altered their testimony to conform with the testimony of any other witness.

Tennessee Rule of Evidence 615 is the rule of sequestration and is "colloquially referred to as 'The Rule.'" Neil P. Cohen et al., Tennessee Law of Evidence, § 6.15[2] (6th ed. 2011). Rule 615 provides:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

The purpose of the rule of sequestration is to "prevent one witness from hearing the testimony of another and adjusting his testimony accordingly." State v. Harris, 839 S.W.2d 54, 68 (Tenn. 1992). The rule may be invoked at any time and is mandatory upon its invocation. See State v. Anthony, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992).

The post-conviction court found that the trial transcript reflected that the rule of sequestration was invoked. Our review of the record confirms the post-conviction court's finding. The record also confirms that Detective Bradley, Mr. Gilreath, and Mrs. Gilreath remained in the courtroom throughout trial. However, the Petitioner failed to show that the witnesses altered their testimony to conform with the testimony of any other witness. Accordingly, the Petitioner failed to establish that he was prejudiced by any alleged violation of the rule of sequestration. See State v. Reginald Fowler, No. E2009-00293-CCA-R3-CD, 2010 WL 3774413, at *18 (Tenn. Crim. App. at Knoxville, Sept. 29, 2010) (citing Stephens, 264 S.W.3d at 739; State v. Sexton, 724 S.W.2d 371, 374 (Tenn. Crim. App. 1986)). Therefore, he is not entitled to relief on this issue.

## D. Sentencing

The Petitioner's next contention is that trial counsel was ineffective by failing to challenge the sentences imposed by the trial court based upon a violation of Blakely v. Washington, 542 U.S. 296 (2004). The State responds that the Petitioner's sentences comply with the dictates of Blakely and notes that this court found that the sentences imposed by the trial court were proper on direct appeal.

In Blakely, the United States Supreme Court held that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" 542 U.S. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)). In response to Blakely, our legislature amended Tennessee's sentencing scheme in 2005 and passed amendments to the Sentencing Act to ensure that Tennessee's sentencing scheme could withstand Sixth Amendment scrutiny. See State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). The Petitioner's crimes were committed in 2007, and he was tried in 2009, well after our legislature amended the Sentencing Act. We conclude that trial counsel was not ineffective by failing to challenge the Petitioner's sentences because of a Blakely violation.

The Petitioner also contends that trial counsel was ineffective by failing to challenge the State's "untimely notice of enhancement and the sentencing finding based upon the prosecution's failure to provide certified copies of his prior convictions as well as failure to establish that [the Petitioner] was represented by counsel or had executed a valid waiver of counsel when [he] was convicted of the prior convictions." The State responds that the post-conviction court correctly found that this issue was addressed on direct appeal. The State maintains that "[e]ven if counsel were deemed to be deficient in failing to raise this issue at the sentencing hearing, the [P]etitioner still has not offered any evidence of prejudice."

This court's opinion on direct appeal reflects that trial counsel acknowledged he did not challenge the use of the prior convictions at trial, but he nevertheless sought plain error review, arguing "that the Florida convictions do not affirmatively show that [the Petitioner] was represented by counsel." Fusco, 404 S.W.3d at 530. This court reviewed the issue for plain error and found none. Id. The post-conviction court found that "[t]he issue of sentencing was reviewed by the Tennessee Court of [Criminal] Appeals, as relates to enhancements of the Petitioner's sentence, and therefore is not appropriate for consideration in this proceeding." We conclude that the post-conviction court erred because the Petitioner did not challenge the effectiveness of trial counsel on direct appeal. See Miller v. State, 54 S.W.3d 743, 748 (Tenn. 2001); Bruce Turner v. State, No. W2014-01426-CCA-R3-PC, 2015 WL 6438588, at *8 (Tenn. Crim. App. at Jackson, Oct. 22, 2015). However, we conclude that the Petitioner failed to establish that he suffered any prejudice by the alleged deficiency of trial counsel. Moreover, as the State notes, the Petitioner offered no proof to establish that the prior judgments "were invalid or incorrect in any way." Accordingly, we conclude that the Petitioner is not entitled to relief on this issue.

E. Suppression of Text Messages

- 11 -

The Petitioner contends that trial counsel was ineffective by failing to file a motion to suppress the text messages found after a warrantless search of his cellular telephone. The State responds that the law in effect at the time of the Petitioner's trial did not preclude the State from obtaining information from the Petitioner's cellular telephone; therefore, trial counsel was not ineffective. We agree with the State.

In support of his contention, the Petitioner cites Riley v. California, 134 S. Ct. 2473, 2493 (2014). "In Riley, the Supreme Court concluded that a warrant is generally required before law enforcement may search a cell phone, 'even when a cell phone is seized incident to an arrest[]' . . . [and] that generally, the 'search incident to an arrest exception [to the warrant requirement] does not apply to cell phones.'" State v. Jerrico Lamont Hawthorne, No. E2015-01635-CCA-R3-CD, 2016 WL 4708410, at *26 (Tenn. Crim. App. at Knoxville, Sept. 7, 2016) (quoting Riley, 134 S. Ct. at 2493-94), perm. to appeal denied, (Tenn., Feb. 23, 2017). However, "[i]t was not until 2014 that the United States Supreme Court ruled that a search warrant is generally required before the search of any data stored on a cell phone, even when the phone is seized incident to an arrest." Jeffery L. Vaughn v. State, No. W2015-00921-CCA-R3-PC, 2016 WL 1446140, at *5 (Tenn. Crim. App. at Jackson, Apr. 12, 2016) (citing Riley, 134 S. Ct. at 2493), perm. to appeal denied, (Tenn., Aug. 19, 2016). Moreover, Tennessee Code Annotated section 40-6-110, which requires law enforcement to procure a search warrant to examine cellular telephone data, did not become effective until July 1, 2014. Id. As we noted earlier, the Petitioner's trial was held in 2009. This court has cautioned that "'[t]rial counsel cannot be held to a standard of being clairvoyant concerning a case not yet decided.'" Id. (quoting Darryl Lee Elkins and Rhonda Grills v. State, Nos. E2005-02153-CCA-R3-PC and E2005-02242-CCA-R3-PC, 2008 WL 65329, at *6 (Tenn. Crim. App. at Knoxville, Jan. 7, 2008)). We conclude that trial counsel was not deficient for failing to "argue a legal theory which, at the time, lacked any statutory or precedential support." Id.

## F. Double Jeopardy

The Petitioner next contends that trial counsel was ineffective by failing to challenge counts three and four of the indictment on double jeopardy grounds because both used nearly identical language to charge him with the especially aggravated kidnapping of Elke Gilreath. The State responds that, while similar, counts three and four addressed alternative theories of the commission of the offense. We agree and note that "[t]he State may, of course, charge certain crimes under alternative theories[.]" Joseph Lamont Johnson, Jr. v. State, No. M2012-02310-CCA-R3-PC, 2014 WL 793636, at *11 (Tenn. Crim. App. at Nashville, Feb. 27, 2014). The State also responds that the convictions were properly merged and did not violate the principles of double jeopardy. The Petitioner acknowledges that the convictions on counts three and four were merged; nevertheless, he complains that the merger was error because it "allows for the merged

- 12 -

conviction to stand in the event the other conviction is reversed on appeal." We disagree with the Petitioner and note that our supreme court has explained that "under certain circumstances, two convictions or dual guilty verdicts <u>must</u> merge into a single conviction to avoid double jeopardy implications. For example, merger is required . . . when a jury returns guilty verdicts on two counts that represent alternative theories of the same offense." <u>State v. Berry</u>, 503 S.W.3d 360, 362 (Tenn. 2015) (emphasis added). We agree with the post-conviction court that the Petitioner failed to prove that trial counsel was ineffective by failing to challenge the convictions on double jeopardy grounds.

The Petitioner also contends that trial counsel should have challenged his convictions on counts one and two, which charged the Petitioner with conspiracy to commit aggravated robbery and conspiracy to commit especially aggravated kidnapping, respectively, on double jeopardy grounds because "the same essential facts are relied upon therein each count for conviction." The State maintained that the conspiracy convictions were merged and that double jeopardy was not violated. On direct appeal, trial counsel argued that the Petitioner's "two conspiracy convictions should have merged because the facts sustaining both convictions arose out of the same plan devised by [him] and Swim." <u>Fusco</u>, 404 S.W.3d at 529. This court agreed and remanded the case to the trial court for merger of the conspiracy convictions. <u>Id.</u> Therefore, we conclude that the Petitioner was not entitled to post-conviction relief on this issue.

The Petitioner further contends that trial counsel should have challenged his convictions on count one, which charged him with conspiracy to commit aggravated robbery, and count nine, which charged him with attempted aggravated robbery, summarily arguing that they violated the principles of double jeopardy. "Tennessee courts have consistently held that a defendant may be convicted of both conspiracy and the offense which is the object of the conspiracy without violating double jeopardy principles." <u>State v. Thornton</u>, 10 S.W.3d 229, 239 (Tenn. Crim. App. 1999). Therefore, double jeopardy concerns are not implicated by the Petitioner's convictions on counts one and nine, and trial counsel was not ineffective by failing to challenge those convictions.

Additionally, the Petitioner contends that trial counsel should have challenged his convictions on count nine, which charged the Petitioner with attempted aggravated robbery, and count ten, which charged the Petitioner with aggravated burglary, because both alleged that the Petitioner entered the home of the victims "and in essence falsely imprisoned the victims." The State responds that the Petitioner has "a misunderstanding of the law regarding the principle of double jeopardy," noting that the Petitioner's convictions of attempted aggravated robbery and aggravated burglary "arose from a single course of events" but that "the statutory elements of the offenses are distinct." We agree with the State. This court has stated previously that "[a]ttempted . . . aggravated robbery and aggravated burglary are not the 'same' offenses for double jeopardy purposes because each offense requires proof of an element that the other does not."

- 13 -

State v. Samuel L. Giddens, No. M2005-00691-CCA-R3-CD, 2006 WL 618312, at \*13 (Tenn. Crim. App. at Nashville, Mar. 13, 2006). Accordingly, we conclude that trial counsel was not ineffective by failing to challenge the convictions on double jeopardy grounds.

### G. Prosecutorial Misconduct

As his final issue, the Petitioner contends that trial counsel was ineffective by failing to object at trial or request a mistrial "due to the numerous instances of prejudicial and improper comments and conduct by the" State. The Petitioner further contends that trial counsel was ineffective by failing "to raise the numerous issues of improper conduct and comments of the prosecutors as plain error in the motion for new trial and direct appeal."

This court's opinion on direct appeal reflects that trial counsel "contend[ed] that the prosecutor committed prosecutorial misconduct in her closing argument by expressing her personal opinion and by impermissibly predicting the consequences of a 'not guilty' verdict." Fusco, 404 S.W.3d at 519. Trial counsel conceded "that he did not object to the closing argument but assert[ed] that plain error review [was] appropriate." Id. This court concluded that no prosecutorial misconduct was committed. Id. at 522. We conclude that the Petitioner failed to establish that trial counsel was ineffective in this regard.

## III. Conclusion

In sum, we conclude that the post-conviction court did not err by denying post-conviction relief. Therefore, the judgment of the post-conviction court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE